77029. MURAWSKI et al. v. ROLAND WELL DRILLING, INC. et al.

(374 SE2d 207)

BIRDSONG, Chief Judge.

This is an appeal from the order of the trial court, entered after a non-jury trial, in effect, denying appellant-property owners injunctive relief or declaratory judgment against appellee-water suppliers. A central dispute in this case involves the rates that lawfully can be charged for certain water supply services to the households of Robinwood Subdivision which are dependent thereon.

In 1975, appellee Roland Well Drilling, Inc. (hereinafter referred to as Roland) entered into a written contractual agreement with G. W. Robinson. Pursuant to this agreement, appellee Roland undertook to provide water service to a proposed residential subdivision, subsequently known as Robinwood Estates, to be developed by Robinson. This agreement contained other provisions, which in essence provided: (a) that in consideration of Roland constructing the water supply system "in strict accordance with the terms of this contract," Robinson would for the next 20 years insert a restriction into all deeds conveying any lot in the subdivision, which restriction would bind the grantee to a covenant not to construct a private water supply system or to dig a well on the described property or to allow the described property to be served with water from any source other than

Roland; (b) that Robinson did grant to Roland a certain easement within the subdivision for the purpose of constructing and maintaining the mains and lines of the water supply system; (c) that the water supply system would meet certain specifications, including that the water mains would not be less than four inches in diameter and that the pump would be of not less than 7½ horsepower; and, (d) that when an owner of a lot in the proposed subdivision actually commences to use water from said system, Roland would enter into a written contract with the lot owner agreeing that for 20 years from the date of the contract water would be supplied of a specified quantity and quality and at a specified fee; and, that the fee is not subject to increase except to the extent necessary to cover increased costs to the water supply system for electricity and chemicals used to treat the water.

Contemporaneously or subsequently to this original agreement, Roland and Robinson executed a written contract addendum. The addendum authorized Roland at his discretion to install water meters on lots in the subdivision, and in return bound Roland to charge on a monthly basis each metered lot a *minimum* charge of $7.75 per month for the first 5,000 gallons of water used; $.50 per 1,000 gallons of water used for the next 5,000 gallons used; and $.40 per 1,000 gallons for any water used in excess of 10,000 gallons. Both the contractual agreement and its addendum were duly recorded in the Land Records of Decatur County.

Approximately seven months later, appellee Roland executed and delivered a trust deed to appellee Decatur Consolidated Water Services, Inc. (hereinafter referred to as Decatur Water). By virtue of this document, appellee Roland conveyed to Decatur Water, as trustee, certain property and rights with respect to the Robinwood Subdivision water system. The trust document pertinently reflects on its face that it was "the intention and purpose of the grantor" to "assure the continuance of the operation and maintenance of [the Robinwood] water system for the benefit of the present and future owners of the properties connected thereto, the mortgages [sic] holding mortgages covering such property, and the Federal Housing Administration and Veterans Administration." According to the terms of the trust document: (a) a certain described property — apparently constituting the primary Robinwood Subdivision water system facility — was conveyed to the trustee for the asserted benefit of certain Robinwood present and future property owners, together with other water system equipment and facilities and all easements incident thereto; (b) that on the happening of either of two events, relating to the furnishing of water to Robinwood Subdivision by governmental authority or public utility, the trustee would immediately reconvey the trust property to Roland, its successors or assigns; (c) that certain

water standards of quality, purity and quantity would be maintained by the grantor Roland; (d) that under certain conditions if the grantor Roland failed to operate and manage the water system, the trustee Decatur Water could do so, and in that event would be subrogated to all rights of the grantor Roland to levy and collect a charge against each customer not in excess of the rates established in the trust deed; (e) that the grantor could install a water meter on each individual property, and "reserves the right to levy and collect a reasonable charge for water furnished and consumed by the occupants of each of the properties connected . . ."; and, (f) that in the event of certain specified beneficiary opposition to any proposed change of rates the matter would be resolved by a specified system of arbitration.

The trust deed was signed by the grantor Roland and the then President of Decatur Water; however, it was not signed by anyone expressly purporting to represent the existing and future Robinwood property owners. The developer, G. W. Robinson, was not a party to the trust deed or to any of its provisions. The parties do not contest that the trust deed agreement subsequently was recorded in the Land Records of Decatur County.

From the date of the first recorded agreement until early March of 1986, water was provided to residences without significant interruption, and without significant disagreement as to terms of any of the above discussed agreements. In March 1986, however, appellee Decatur Water gave the appellants notice of an increase in water rates, prompting the appellants to object and to initiate action seeking declaratory judgment, injunctive relief and other relief deemed appropriate.

The record reflects that Geneva Roland is the president of both Roland and Decatur Water, and that she and her immediate family are the sole shareholders of both businesses. Her testimony also pertinently establishes that the water system was operated with only a 3½ horsepower pump until the pump was replaced by one of five horsepower, and that a new well with its own five horsepower pump should soon become operational. Further, it is established that while certain of the water mains are of four inches in diameter, certain other water mains are only two inches in diameter. Attorney for the appellant/plaintiffs, testified that on behalf of his clients he had examined the Land Records of Decatur County, and that the trust deed was not executed by any person who was a predecessor in title to any of the lots in the subdivision, and that the trust deed thereby did not appear in the chain of title to any of the resident lots owned by the plaintiffs.

After entering findings of fact and conclusions of law, the trial judge tacitly declined to grant appellants' requested relief and pertinently held that "the contracts named herein and all addendums thereto [including the terms of the trust deed agreement] are in full

force and effect on all parties to this lawsuit and all parties shall be governed accordingly." *Held*:

1. Appellants assert that the trial court erred in its finding of fact regarding the primary purpose of the trust agreement. We disagree. OCGA § 9-11-52 precludes this court from setting aside findings of the trial court, made pursuant thereto, unless the findings are "clearly erroneous." The trial court's findings of fact are adequately supported by the record.

2. Appellants further enumerate as error that the trial court erred in its holding that "the contracts named herein and all [addenda] thereto are in full force and effect on all parties to the lawsuit and all parties shall be governed accordingly."

Considering the operative facts, we are satisfied that the original contractual agreement between Roland and the common grantor to the parties of this suit, G. W. Robinson, together with the addendum thereto, constitutes a valid and binding agreement between them.

Further, considering the operative facts, including the terms of the recorded Robinson and Roland agreements, the restrictive covenant provision in certain former and present Robinwood residents' deeds, and appellee Roland's apparent "clean hands" *at the time its contract* with Robinson *was signed*, we find that a restrictive covenant has been imposed upon those lots in the Robinwood Subdivision whose chain of title can be traced to the common grantor G. W. Robinson. This restrictive covenant, which clearly touches and concerns the land, is identical in its terms to the provisions therefor contained in the original recorded agreement between Roland and G. W. Robinson. See generally Pindar, 2 Ga. Real Estate Law & Procedure, Ch. 22B; compare *Johnson v. Myers*, 226 Ga. 23 (172 SE2d 421) with *Langenback v. Mays*, 207 Ga. 156 (60 SE2d 240); see also 21 CJS Covenants, § 54. Specifically in the development of Robinwood, a restrictive covenant has been intentionally created providing in essence that for a stated 20-year period the grantee shall not construct a private water supply system on the property, dig a well thereon, or allow the property to be served with water from any other source than Roland, its successors or assigns.

We need not determine whether some form of equitable servitude has also been created justly inseparable from the above-restrictive covenant, imposing a burden in the form of charge on the land for the water supplied thereto, arising from and in strict conformity with the clearly interlocking terms of the original agreement and its addendum of which subsequent grantees, including Roland and Decatur Water, allegedly had notice by virtue of the duly recorded provisions of these particular contract documents. See, e.g., *Langenback*, supra at 158 (2) and (3); Pindar, Ga. Real Estate, supra at § 22-8, n. 2; see also OCGA § 44-2-6. Rather, we find that the binding original contractual agree-

ment and its addendum entered between G. W. Robinson and Roland unequivocally were intended by the parties thereto to be and were in fact a contract made for the benefit of third-party subsequent grantees, particularly with respect to the promises made therein regarding the rates which Roland could charge for water and the subsequent written contracts he would enter concerning those rates with the subsequent grantees of the lots. See, e.g., *Southeast Grading v. City of Atlanta*, 172 Ga. App. 798 (1) (324 SE2d 776), regarding the intent required in third-party beneficiary contracts. Accordingly, appellant grantees, as third-party beneficiaries, may enforce contracts made for their benefit. OCGA § 9-2-20 (b); *Muldawer v. Stribling*, 243 Ga. 673, 676 (256 SE2d 357).

Regarding the trust deed agreement, we find that no restrictive covenants binding upon the lots of the appellants have been created thereby. First, the document on its face fails clearly to establish any such restrictions. Restrictions on the use of land must be clearly established and strictly construed. *Copelan v. Acree Oil Co.*, 249 Ga. 276, 278 (290 SE2d 94). " 'Doubt as to restrictions and use will be construed in favor of the grantee' " upon whose land a particular restriction is sought to be imposed. Id. Secondly, privity of estate is required to create a covenant running with the land. See, e.g., *Copelan*, supra at 276 (2); *Muldawer*, supra at 675 and n. 1. Inherent in this concept is the requirement that grantees whose property is sought to be bound have a "common grantor bound by the restrictive covenants." *Pinetree &c. Homeowners Assn. v. First United Lutheran Church*, 241 Ga. 228 (2) (244 SE2d 856); *Arnovitz v. Murphy Real Estate Co.*, 164 Ga. 739 (139 SE 530). Thus, "[t]he necessity of privity also requires that the covenant be in the chain of title of a purchaser against whom enforcement is sought." Pindar, Ga. Real Estate, supra at 22-8. Thirdly, appellee Roland, merely by transferring certain land owned by it to a trustee, appellee Decatur Water, purportedly for the purpose of benefitting appellant property owners who are named as beneficiaries to the trust, could not create any form of a covenant running with the land upon the property placed in trust that would be binding on the appellant property owners. In this situation the appellant property owners did not attain any legal title to the property conveyed in the trust deed to Decatur Water. "Although a different rule may prevail in equity, ordinarily covenants run only with the legal title to lands and tenements." 21 CJS, Covenants, § 57. Accordingly, "[a]s a general rule, no one is bound by the covenants of a deed who did not execute it *and* who is not named or referred to therein as being bound by the covenants. Thus, the equitable owner of land is not liable for breach of a covenant contained in a deed executed by the holder of the legal title, where he does not join in the deed." (Emphasis supplied.) 21 CJS, Covenants, § 86.

It is clear from the record that the appellants did not execute the trust deed. The fact that one former property owner, Edwin "Ed" Brewer, who is not a party to this action, signed the trust deed as President of and on behalf of Decatur Water does not legally constitute an execution of the trust deed on the part of the appellant property owners. While the conduct of Mr. Brewer may have operated to estop him from contesting the enforceability of the trust deed, a question with which we are not here presented, it certainly did not operate to bind any of the appellants, especially as the trust deed on its face reflects that Mr. Brewer was acting in his capacity as a Decatur Water official and not as a legal representative of the other present and future Robinwood property owners.

We have found that the necessary privity of estate does not exist as to appellant property owners regarding the terms of the trust deed. However, in an appropriate circumstance, an equitable servitude can be created, based upon a person taking land with notice of a covenant and thus giving rise to a "privity of conscience." In these instances, there is no requirement for a "privity of estate." See generally *Johnson v. Myers*, supra at 26, citing *Rosen v. Wolff*, 152 Ga. 578 (110 SE 877); Ga. Real Estate Law, supra at 22-8, n. 2. Assuming, without deciding that some form of equitable servitude could be imposed in this case that would encompass the "burdens" appellees seek to be placed upon the land of water rates and water rate arbitration requirements, as contained in the trust deed, we find such equitable relief not warranted in this case. It is a well-recognized maxim that he who seeks equity must do equity. OCGA § 23-1-10. This maxim is the foundation block for the "clean hands" doctrine. *Partain v. Maddox*, 227 Ga. 623 (4) (a) (182 SE2d 450). Considering the attendant circumstances, including the nature and totality of Roland's conduct after contracting with Robinson and the marked difference in bargaining position between the water-needing appellants and the water-possessing appellees, we conclude that neither the equitable remedies of equitable servitude nor equitable estoppel are available to the appellees.

Finally assuming arguendo that appellee Roland retained certain limited power after its contract with Robinson to amend the water rates to be charged Robinwood residents, we find that the provisions contained in the trust deed did not, as to the appellant landowners, constitute binding contractual provisions which could be enforced by the appellees. To create a valid and enforceable contract against appellant property owners, their assent to the alleged contractual terms of the trust deed normally would be required. OCGA § 13-3-1. While under certain conditions, " '[a]ssent to the terms of a contract may be given other than by signatures,' " *Rogin v. Dimensions South Realty*, 153 Ga. App. 75, 77 (264 SE2d 555), we find that this is not such a case. Considering the relationship of the appellants, as evidenced by

the face of the trust deed as being mere beneficiaries to the "benefits" thereof, and the *clearly unequal bargaining position* between the appellees and the appellants (most of whom had not even purchased their property as of the date of execution of the trust deed), we find that the appellants' subsequent conduct in dealing with appellees did not constitute either an assent to the "burdens" allegedly imposed upon them by the trust deed or a ratification thereof. Moreover, considering the attendant facts, appellants are not estopped to contest the "burdening" terms of the trust deed. Thus, we find that the trial judge erred to the extent that he considered the burdening terms of the trust deed to be enforceable against appellants.

3. In view of the above, appellants' remaining assignments of error need not be discussed. This case shall be remanded to the trial judge for disposition consistent herewith.

*Judgment reversed and case remanded with direction. Banke, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 15, 1988 —
REHEARING DENIED OCTOBER 13, 1988.

*Rikard L. Bridges*, for appellants.
*Ralph C. Smith, Jr., Paul Fryer*, for appellees.