## S03G0475. BICKFORD et al. v. YANCEY DEVELOPMENT COMPANY, INC.

(585 SE2d 78)

Sears, Presiding Justice.

We granted certiorari in order to consider whether OCGA § 44-5-60 (d) (1), as revised in 1993, automatically renewed restrictive covenants that were established in 1977. For the reasons explained below, we hold that OCGA § 44-5-60 (d) (1), as revised in 1993, applies only to covenants established after the revised subsection's effective date, July 1, 1993. Therefore, we affirm.

In 1977, Frank Swift subdivided a 165 acre tract of land he owned in Cobb County into home sites for a residential development. That same year, Swift recorded a plat of the tract which contained a notation restricting the subdivided lots to a minimum size of two acres.

In 2000, appellee Yancey Development Company, Inc. ("Yancey"), purchased two of the subdivision's larger lots. Yancey then announced its intention to subdivide the two lots into roughly 80 half-acre parcels and applied to Cobb County for a permit to develop the property as R30, which requires a minimum lot size of 30,000 square feet. Appellants, adjoining property owners, filed suit seeking to enjoin the development and also sought declaratory relief that Yancey is subject to the 1977 covenant restricting lot sizes to no less than two acres.

The trial court granted summary judgment to Yancey and the Court of Appeals affirmed,[1] finding that assuming a valid restrictive covenant was established in 1977,[2] it lapsed as a matter of law after twenty years, in 1997, pursuant to OCGA § 44-5-60 (b). The Court of Appeals also held that although OCGA § 44-5-60 (d) (1) (as amended in 1993) provides for the automatic renewal of restrictive covenants affecting planned subdivisions such as the one at issue here, the statute could not be applied in this case because to do so would result in the retrospective impairment of vested property rights.

1. OCGA § 44-5-60 (b) provides that restrictive covenants shall run for no longer than 20 years. However, effective July 1, 1993, OCGA § 44-5-60 (d) (1) was amended to provide for an automatic 20-year renewal of a covenant in subdivisions containing 15 or more plots, unless 51 percent of the affected owners execute a document expressing their desire that the covenant be terminated.

In *Appalachee Enterprises v. Walker*,[3] we considered whether the

---

[1] *Bickford v. Yancey Dev. Co.*, 258 Ga. App. 371 (574 SE2d 349) (2002).

[2] We do not consider here whether Swift's 1977 notation on the recorded plat was sufficient to create a valid restrictive covenant.

[3] 266 Ga. 35 (463 SE2d 896) (1995).

1993 revision to OCGA § 44-5-60 (d) (1) automatically renewed a covenant that was created before 1993, but would not expire until after 1993. In *Appalachee*, the covenants were sought to be enforced against a purchaser who had acquired the property before 1993. We held that because the owner had purchased the property in reliance upon then-existing law that provided the covenants would not be renewed, the automatic renewal provisions of subsection (d) (1) did not apply to that particular owner.[4]

The present appeal also concerns a situation where the covenants were created before 1993 and expired after OCGA § 44-5-60 (d) (1) was revised in 1993. However, unlike *Appalachee*, in this appeal the covenants are sought to be enforced against an owner who purchased its property **after** the 1993 revision to subsection (d) (1) became effective and **after** the covenants had been in existence for over 20 years. Thus, while *Appalachee* is instructive for purposes of resolving this appeal, it also is distinguishable and non-dispositive. Furthermore, resolution of this appeal requires us to answer a question not fully resolved in *Appalachee* — whether the 1993 revision to OCGA § 44-5-60 (d) (1) applies to covenants put in place before the revision's effective date of July 1, 1993.

2. We conclude that the 1993 revision to OCGA § 44-5-60 (d) (1) applies only to covenants established after the revision became effective on July 1, 1993. As our precedent makes clear, a statute generally is not to be applied retroactively unless the statute's language "imperatively requires it."[5] A statute does not operate retroactively merely because it might relate to antecedent transactions. To the contrary, before a statute will be applied retroactively, the legislature must clearly state its intention to " 'affect transactions which occurred or rights which accrued' " before the statute became effective, and to treat those transactions and/or rights differently under the law than they were treated " 'at the time of their occurrence.' "[6]

Over 50 years ago, this Court applied these same general principles when considering the predecessor to OCGA § 44-5-60, and held that the statute lacked any language to indicate that the legislature intended it to be applied retroactively.[7] Since then, though it has been revised several times, no language has been added to the statute to indicate a contrary legislative intent. Certainly, there is nothing in the 1993 revision to subsection (d) (1) that indicates the legis-

---

[4] 266 Ga. at 37.

[5] *Appalachee*, 266 Ga. at 36.

[6] *Appalachee*, 266 Ga. at 36, quoting *Ross v. Lettice*, 134 Ga. 866, 868 (68 SE 734) (1910).

[7] *Dooley v. Savannah Bank &c. Co.*, 199 Ga. 353, 365 (34 SE2d 522) (1945); *Smith v. Pindar Real Estate Co.*, 187 Ga. 229, 236 (200 SE 131) (1938).

lature intended the automatic renewal provisions to be applied retroactively. Accordingly, based upon long-standing precedent regarding statutory interpretation, we conclude that the automatic renewal provisions of OCGA § 44-5-60 (d) (1) do not apply retroactively and apply only to covenants put into place after the revised subsection's effective date of July 1, 1993.[8]

3. We also believe that sound public policy concerns mandate that OCGA § 44-5-60 (d) (1)'s automatic renewal provision be applied only to covenants established after July 1, 1993. Appellants urge that the recordation date of a covenant should have no bearing on the application of subsection (d) (1)'s automatic renewal provision, but rather that the subsection's application should turn on when a parcel of property was purchased by its owner. Taken to its logical conclusion, however, appellants' argument would create great disparity in the application of restrictive covenants among neighboring property owners.

Under this argument, property owners in appellants' neighborhood who purchased their land before July 1, 1993, would be governed by OCGA § 44-5-60 (b), so that the covenant restricting lot sizes to two acres, as applied to them, automatically expired after twenty years, in 1997. However, owners in the same neighborhood who purchased their property after July 1, 1993, would be governed by the 1993 revision to subsection (d) (1), in which case the covenant, as applied to them, would be extended for an additional 20 years, until 2017. This situation is neither logical nor desirable, as it would lead to a "checkerboard" of enforceable covenants in a single development, where the covenants would be enforceable against some property owners but not others, depending entirely upon when they purchased their respective parcels.

In fact, appellants' reasoning would lead to a situation where Yancey's predecessor in title, who purchased the subject property before 1993, would not have been bound by the covenant after the passing of 20 years, in 1997. Hence, as of 1997, Yancey's predecessor (had he not sold his parcel) could have developed the property exactly as proposed by Yancey, and such development would not have run afoul of the 1977 covenant restricting lot sizes to two acres. However, under appellants' argument, the mere act of selling the property to Yancey after July 1, 1993, triggered the automatic renewal provisions of OCGA § 44-5-60 (d) (1), making the covenant enforceable when applied against Yancey.

The very purpose of restrictive covenants is to allow for uniform-

---

[8] It follows that obiter dictum in *Appalachee*, 266 Ga. at 36 (1), stating that the 1993 revision to subsection (d) (1) applies so long as the covenant at issue expired after July 1, 1993, was incorrect and is hereby disapproved.

ity in a given, planned development. In the area of real property law, rights and restrictions relating to covenants that run with the land must be certain and unequivocal.[9] As demonstrated by the examples set out above, appellants' argument would lead to a situation that is contrary to these basic precepts. Public policy dictates that we avoid any reasoning or ruling that might lead to such harmful and ill-advised consequences.

4. For the reasons explained above, we hold that the 1993 revision to OCGA § 44-5-60 (d) (1), providing for the automatic 20-year renewal of restrictive covenants affecting subdivisions containing 15 or more plots, applies only to those restrictive covenants that are established under law after July 1, 1993. As for all restrictive covenants established before July 1, 1993, they are governed by OCGA § 44-5-60 (b), and thus are deemed unenforceable after a period of 20 years. In this appeal, the restrictive covenant at issue was established in 1977, expired in 1997, and is no longer enforceable against any property owner in the subdivision, regardless of when the owner purchased his or her lot.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 11, 2003.

*Brock, Clay, Calhoun, Wilson & Rogers, Richard W. Calhoun, Shilpa S. Masih,* for appellants.

*Bentley, Bentley & Bentley, Fred D. Bentley, Jr., Coleen D. Hosack, Sam P. Hensley, Jr., Weissman, Nowack, Curry & Wilco, Jeffery H. Schneider, Moore, Ingram, Johnson & Steele, John K. Moore, John H. Moore,* for appellee.

---

[9] See Pindar, Georgia Real Estate Law & Procedure, § 19-180, p. 241 (5th ed. 1998).