A06A2059. BRITT v. ALBRIGHT et al.
(638 SE2d 372)

PHIPPS, Judge.

After contracting to purchase property in a residential subdivision, Darron Britt filed a complaint for declaratory relief against owners and parties with interests in other property in the subdivision. Britt sought a declaration that restrictive covenants that had been made applicable to the subdivision over 20 years earlier either had expired by operation of law or do not prohibit him from re-subdividing the tracts he contracted to purchase. On cross-motions for summary judgment, the trial court ruled that the covenants are currently in effect and prohibit Britt from re-subdividing his tracts into residential lots with less than five acres. Although the trial court did not err in finding that the covenants are still in effect, it did err in ruling that their interpretation presents a legal matter for the court rather than a factual matter for the jury. We, therefore, affirm in part and reverse in part.

The subdivision, known as Bay Creek Estates, is in Gwinnett County. The restrictive covenants were filed of record in 1983. Two of them are directly in issue here. The first, referred to as Item 4, states

---

that "[n]o lot shall be resubdivided." The second, referred to as Item 15, states that the restrictive covenants shall be binding for a period of 20 years from the date the covenants are filed for record "after which time these covenants shall be automatically extended for successive periods of 10 years unless an instrument signed by the owners of a majority of the lots has been recorded agreeing to modify said covenants in whole or in part."

The property to which the covenants apply, i.e., Bay Creek Estates, was identified in a metes-and-bounds property description attached as an exhibit to the covenants. The metes-and-bounds description refers to a recorded plat (the "incorporated plat"). That plat describes Bay Creek Estates as consisting of one tract composed of 173.79 acres and another tract composed of 0.16 acres. That plat does not, however, show that either tract had been subdivided. But at about the time the covenants were recorded, the developers recorded another plat to which the covenants do not refer (the "unincorporated plat"). It shows that the property had been subdivided into twenty-three residential lots having a minimum size of five acres each and a larger un-subdivided tract of 53.852 acres identified as Tract 19. Britt contracted to purchase the larger Tract 19, as well as Tract 18 which is one of the 23 residential lots consisting of 5.171 acres.

In or about 1987, the subdivision developers filed a modification to the restrictive covenants seeking to clarify that they did not intend the covenants to prohibit further re-subdivision of Tract 19 and that their actual intent in establishing the covenants was to provide for lots having a minimum size of five acres each. The parties to this suit agree, however, that this modification or amendment to the covenants was not valid because a majority of the lot owners did not agree to it.

Britt contracted to purchase Tracts 18 and 19 believing that they are unencumbered by the restrictive covenants and that he can subdivide them into lots without size restrictions. Because the defendants disagree, Britt brought this suit for declaratory relief.

The trial court found that the automatic renewal provision in the restrictive covenants is valid and enforceable and that the covenants, therefore, remain in effect. The court found that the question of whether Item 4 of the restrictive covenants applies to Tract 19 is ambiguous. In resolving the ambiguity, the court determined that it was authorized to consider extrinsic evidence provided by the attempted 1987 modification of the covenants as well as the unincorporated plat. The court thereby concluded that it was the intent of the drafters of the covenants to apply Item 4 to the 23 developed residential "lots" and not to Tract 19. The court also concluded that Item 4 was intended to prevent any of the property located in Bay Creek Estates, including Tract 19, from being subdivided or re-subdivided

into lots smaller than five acres. Summary judgment on the various issues was granted to the parties accordingly.

1. The court correctly ruled that the automatic renewal of the 1982 covenants was valid and enforceable and that the covenants, therefore, remain in effect.

"OCGA § 44-5-60 (b) provides: '(C)ovenants restricting lands to certain uses shall not run for more than 20 years in municipalities which have adopted zoning laws nor in those areas in counties for which zoning laws have been adopted.' "[1] Undisputably, zoning laws have been adopted in Gwinnett County. The current version of OCGA § 44-5-60 (d), which became effective in 1993, "provide[s] an automatic 20-year renewal of a covenant (in subdivisions containing 15 or more individual plots) unless 51 percent of the record owners of plots affected by the covenant execute a document in proper form stating their wish that the covenant be terminated."[2] OCGA § 44-5-60 (d) cannot, however, be applied retroactively to covenants recorded before 1993, such as the ones here.[3] But where the covenants themselves provide for their automatic renewal in the absence of an objection by property owners, as do the ones here, the question of retroactive application of the statute does not arise, and the automatic renewal provision is valid and enforceable as a matter of contract law.[4]

2. The court erred in ruling that Item 4 does not apply to Tract 19, as a matter of law, and that Item 4 prohibits re-subdivision of subdivision property into lots with less than five acres each.

As filed in 1982, there are 15 separate covenants or "Items" applicable to Bay Creek Estates. Most of the covenants refer to tracts or lots in the disjunctive. For instance, Item 5 provides that "[n]o oil or mining operations shall be conducted upon any tract or lot." Item 7 generally prohibits placement of signs or advertising displays on "any lot or tract." And Item 8 provides that "[n]o garbage or refuse shall be dumped or otherwise placed or disposed upon any lot or tract." Several of the other covenants, in contrast, refer only to "lots." In this regard, Item 4 states that no "lot" shall be re-subdivided. Item 6 states that "[n]o trade or business and no unsanitary, offensive, noxious or unsightly conditions of any cause whatsoever shall be maintained, licensed, or allowed to exist on any lot." Item 12 provides that "[n]o mobile homes shall be allowed on any lot." And Item 14

---

[1] *Turtle Cove Property Owners Assn. v. Jasper County*, 255 Ga. App. 560, 561 (566 SE2d 368) (2002).

[2] *Appalachee Enterprises v. Walker*, 266 Ga. 35, 35-36 (463 SE2d 896) (1995).

[3] Id. at 36-37 (2); *Bickford v. Yancey Dev. Co.*, 276 Ga. 814 (585 SE2d 78) (2003) (disapproving *Appalachee* in part on other grounds).

[4] *Turtle Cove*, supra; *Sweeney v. The Landings Assn.*, 277 Ga. 761 (1) (595 SE2d 74) (2004).

states that, "[t]he various restrictive measures and provisions of this instrument are declared to constitute mutual restrictive covenants and servitudes for the protection and mutual benefit of each lot owner."

Restrictive covenants, as contracts, are interpreted according to the rules of contract construction.[5]

> Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If so, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of [contract] construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder.[6]

Moreover, in resolving an ambiguity, the court is authorized to consider extrinsic evidence.[7]

Here, the covenants use the terms "tract" and "lot," while referring to a plat identifying the property as consisting of tracts which had not been subdivided into lots. The court was thus authorized to find an ambiguity in the covenants' use of these terms.

Considering the extrinsic evidence consisting of the (albeit invalid) 1987 covenant modification and the unincorporated plat, the court was further authorized to find that the subdivision developers intended the covenants to provide for minimum five-acre lots and did not otherwise intend to prohibit the re-subdivision of Tract 19. But taking all of the covenants into consideration, it is not at all clear that the developers intended only those covenants using the term "tract" to apply to Tract 19.[8] And although the ambiguity in the covenants can arguably be resolved by interpreting Item 4 as not prohibiting the re-subdivision of Tract 19, the covenants are in no way capable of

---

[5] See *Black Island Homeowners Assn. v. Marra*, 274 Ga. App. 265, 266 (1) (617 SE2d 148) (2005).

[6] Id. (footnote and punctuation omitted).

[7] *Asian Square Partners v. Ly*, 238 Ga. App. 165, 166-167 (1) (518 SE2d 166) (1999).

[8] For instance, although Item 6 mentions only lots, it would not appear that the subdivision developers intended to exempt Tract 19 from the Item 6 prohibition against maintaining unsanitary, offensive, noxious or unsightly conditions. Compare *C.H.E., Ltd. v. Kent*, 262 Ga. 418 (419 SE2d 915) (1992) (subdivision's restrictive covenants which had been made applicable to "lots" clearly did not apply to tract within subdivision plat not designated as a "lot"); *Bales v. Duncan*, 231 Ga. 813 (1) (204 SE2d 104) (1974) (same).

being interpreted as restricting lots to a minimum size of five acres each. Quite simply, although that was apparently the developers' intent, the covenants themselves contain no such provision. Neither a court nor a jury is authorized to add provisions to a contract under the guise of resolving an ambiguity in the contract. Whether Item 4 applies to Tract 19 in the absence of a requirement that the tract be re-subdivided into lots no smaller than five acres each is for the jury.

Britt argues that any ambiguity in the covenants must be resolved in favor of allowing him to re-subdivide Tract 19 without restrictions on lot size, under the rule that "when construing the applicability of a restrictive covenant to a questioned parcel of land a presumption will operate in favor of the free use of the land by its owner and any doubt will be resolved in favor of the owner."[9] We do not find that this rule requires interpretation of the covenants in the manner suggested by Britt, because the drafters of the covenants undoubtedly did not intend the covenants to permit re-subdivision of Tract 19 into lots without size restrictions (although, given the invalidity of the 1987 amendment, a jury would be authorized to find that this is the covenants' effect).

3. Britt contends that the trial court erred in not invalidating the covenants on the ground that they were signed by the developers' real estate agent under a power of attorney ineffective for that purpose.[10] We find no merit in this contention. Even if the real estate agent had signed the covenants under a power of attorney not broad enough to give him such authority, it appears that the developers by their subsequent actions acknowledging the validity of the covenants ratified his act.[11]

4. Finally, Britt charges the trial court with error in interpreting the automatic renewal provision in the covenants as requiring them to remain in effect for ten years following their automatic renewal date regardless of whether a majority of the owners of lots might vote to terminate them. We do not interpret the court's order as foreclosing modification of the covenants before expiration of the ten-year period by a majority of the lot owners.[12] Thus, we find no error.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Smith, P. J., concur.*

---

[9] *Bales*, supra (citations omitted); *C.H.E.*, supra at 419 (citing *Bales*).

[10] See generally *Johnson v. Johnson*, 184 Ga. 783 (1) (193 SE 345) (1937) and *Hargrove v. Armour Fertilizer Works*, 31 Ga. App. 465 (120 SE 800) (1923) (cited by Britt).

[11] See *Flake v. Fulton Nat. Bank of Atlanta*, 146 Ga. App. 40 (245 SE2d 330) (1978).

[12] If a proposal is made to modify or terminate the covenants, the owner of Tracts 18 and 19 or his assignee would be entitled to no more than two votes, as these tracts constitute no more than two of the twenty-four tracts or lots currently in the subdivision.

*Webb, Tanner, Powell, Mertz & Wilson, William G. Tanner, Anthony O. L. Powell,* for appellant.

*Zachary & Segraves, Kenneth L. Levy, Kenneth W. Carpenter,* for appellees.