A07A1877, A07A1878. ALDAY et al. v. DECATUR
CONSOLIDATED WATER SERVICES, INC.; and vice versa.
(658 SE2d 476)

JOHNSON, Presiding Judge.

In 1975, Roland Home and Farm Services, Inc., entered into a contract with Holly Isles Estates, the developer of a Seminole County subdivision, to construct a water supply system in the subdivision. The contract entitled Roland to receive income from the system, with Paragraph 7 of the contract providing that Roland shall initially charge a minimum fee of $60 per year, although such fee may be increased under certain circumstances. In 1988, Roland transferred its rights and obligations under the contract to Decatur Consolidated Water Services, Inc. Over the years, Decatur Consolidated has repeatedly increased its minimum annual fee so that by 2006 it was $309.

Several residents of the subdivision filed the instant declaratory judgment action, seeking declarations as to the maximum amounts that Decatur Consolidated may charge for water usage and that residents may extract water from nearby Lake Seminole. Decatur Consolidated filed an answer and counterclaim, seeking a ruling that it is charging appropriate fees under Paragraph 7 of the contract.

A bench trial was held, after which the trial court entered judgment in favor of Decatur Consolidated. The residents appeal from the judgment, challenging the trial court's findings as to fees and a restrictive covenant in the contract. Decatur Consolidated cross-appeals, challenging the trial court's finding that the residents have standing to sue under the contract.

## Case No. A07A1877

1. The residents contend that the trial court erred in finding that Decatur Consolidated is appropriately charging rates under Paragraph 7 of the contract. We agree that the finding is not supported by the evidence.

Paragraph 7 allows Decatur Consolidated to increase the initial minimum fee of $60 per year under certain circumstances and in amounts specifically tied to its expenses and profits. Paragraph 7 provides:

[Decatur Consolidated] agrees that the minimum fee of $60.00 per year or $5.00 per month will not be increased so long as the residents of each individual lot of [the subdivision] do not use more than 3,000 gallons of water per month, unless maintenance and operating costs increase. Further, [Decatur Consolidated] agrees that if there is an increase in

the minimum monthly charges of $5.00 that any and all increases will be proportionate to the increase of the maintenance and operating expenses of the system. Further, [Decatur Consolidated] agrees that at no time shall it increase its net profit by more than five (5%) percent of the previous years net profit. Further, [Decatur Consolidated] agrees with [Holly Isles] that if their net profit margin is increased over five (5%) percent in any one year, that the net profit margin of [Decatur Consolidated] shall not be increased the preceding year in an amount greater than the percentage which would bring the net profit margin for that year up to five (5%) percent.

There was evidence presented at trial that some residents have used more than 3,000 gallons of water per month and that Decatur Consolidated's maintenance and operating costs have increased. Given those circumstances, Decatur Consolidated is authorized under Paragraph 7 to increase its minimum annual fee. However, the evidence does not show that the fee increases actually imposed by Decatur Consolidated have been appropriate under all the terms of Paragraph 7.

First, there is no evidence that Decatur Consolidated's repeated increases in its minimum annual fees have been *proportionate* to the increases of the maintenance and operating expenses of the water system. Moreover, there is no evidence as to whether Decatur Consolidated has complied with the requirement that at no time shall it increase its net profit by more than five percent of the previous year's net profit. Indeed, rather than basing annual fee increases on the terms set forth in Paragraph 7, two of Decatur Consolidated's own agents — an owner and a general manager — testified that the annual fee increases have been determined by using the Consumer Price Index, a factor which is not included in Paragraph 7 or any other part of the contract as a basis for increasing fees.

The appellate standard of review for bench trials of material facts is the "clearly erroneous" test, also known in civil cases as the "any evidence" rule. Regardless of whether evidence supports an opposite finding, we construe the evidence in favor of the trial court's finding and affirm if there is any evidence to support it.[1]

[1] (Citation omitted.) *Cannon Air Transport Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 516 (2) (548 SE2d 485) (2001).

In the instant case, while there is evidence that Decatur Consolidated is entitled to increase the annual fee, there is no evidence to support the trial court's finding that the increased rates being charged by Decatur Consolidated are in accordance with the terms of Paragraph 7 of the contract. Because the trial court's finding is clearly erroneous, it is hereby reversed.

2. The residents claim that the trial court erred in failing to rule that Decatur Consolidated is required to charge rates for water under Paragraph 10 of the contract. The claim is without merit because the language of that paragraph is not mandatory. Paragraph 10 provides:

> [I]f the amount of water supply being used by the residents of [the subdivision] is such that meters should be installed so that a more accurate charge for the water used by the residents can be recorded, due to the fact that a minimum charge becomes economically unfeasible, [Holly Isles] agrees to *allow* [Decatur Consolidated] to install meters and charge at the same rate as charged by the average of the City of Donalsonville, Georgia and Colquitt, Georgia for water used on their meter system.[2]

Construction of a contract is initially a matter of law for the court, and if the language is clear and unambiguous, the court simply enforces the contract according to its clear terms.[3] Here, the language of Paragraph 10 is clear and unambiguous in that it does not mandate that Decatur Consolidated charge the average water use rate of Donalsonville and Colquitt. Rather, the language is clearly permissive in that it provides that Holly Isles agrees to *allow* Decatur Consolidated to install meters and charge the average rate of those two cities if the condition precedent of the minimum charge becoming economically unfeasible is met. Because the clear and unambiguous language of Paragraph 10 is permissive rather than mandatory, the trial court correctly ruled that Decatur Consolidated is not required to charge rates pursuant to that paragraph.

3. The residents argue that if the trial court was correct in determining that the provisions of Paragraph 10 are too vague to be enforced, then the court erred in failing to find that the entire contract is unenforceable. However, contrary to the key premise of the argument — that the trial court found Paragraph 10 to be vague — the trial court never made such a finding. Instead, what the trial court found is that the residents' proposed method for assessing water

---

[2] (Emphasis supplied.)

[3] *Britt v. Albright*, 282 Ga. App. 206, 209 (2) (638 SE2d 372) (2006).

charges under that paragraph is too vague based on the evidence they submitted. Because the premise of the residents' argument is flawed, the argument fails.[4]

4. In two enumerations of error, the residents challenge the trial court's finding that their lots are subject to a restrictive covenant that prohibits them from withdrawing water from Lake Seminole and from running water lines from one lot to an adjacent lot. The challenges are without merit.

Paragraph 2 of the contract clearly provides that the lots were sold with the following restrictive covenant:

> The Grantee shall not construct a private water supply system on this property nor extend water lines across any lot line but shall use the private water supply system provided, unless said service is inadequate to supply water for them and unless a governmental authority requires installation of a private water system.

There is no evidence that the residents were unaware of the covenant, that the Decatur Consolidated water supply is inadequate or that a government authority requires installation of a private system. Moreover, we note that the residents have failed to cite any legal authority in support of their arguments concerning the restrictive covenant.[5] Given the clear and unambiguous language of the contract and the absence of supporting legal authority, the residents have failed to show that the trial court erred in finding the lots subject to the restrictive covenant.[6]

5. The residents' contention that the trial court erred in failing to rule that residents who own multiple adjacent lots are allowed to use a hose to water flower beds and trees even if the hose crosses a lot line is without merit because this issue was not one upon which the residents sought declaratory judgment. "A declaratory judgment is available when interested parties are asserting adverse claims upon a state of facts wherein a legal judgment is sought that would control or direct future action."[7] Since no legal judgment was sought con-

---

[4] See, e.g., *Tyson Foods v. Craig*, 266 Ga. App. 443, 444 (597 SE2d 520) (2004); *Seals v. Hygrade Dist. &c.*, 249 Ga. App. 574, 579 (3) (549 SE2d 412) (2001).

[5] See Court of Appeals Rule 25 (a) (3), (c) (3) (i).

[6] See *Britt*, supra.

[7] (Citation and punctuation omitted.) *Adams v. Atlanta Cas. Co.*, 225 Ga. App. 482, 484 (1) (484 SE2d 302) (1997).

cerning future action as to water hoses, we find no error in the trial court's failure to rule on this issue in its final judgment.[8]

## Case No. A07A1878

6. Decatur Consolidated argues that the trial court erred in finding the residents have standing as interested parties under the contract. We disagree.

> In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. A third party does not obtain standing to assert claims for breach of a contract where the contract does not evidence an intent to benefit a third party directly, but rather, only benefits citizens and members of the general public indirectly and incidentally.[9]

The contract in this case clearly evidences an intent to benefit the residents of the subdivision. One of the opening clauses of the contract expressly states that Holly Isles desires "to provide service immediately and to provide a better water supply system for the residents of [the subdivision]." The next clause states that Roland, thus its successor Decatur Consolidated, was making arrangements concerning the system "with a view to providing adequate water supply and distribution for the residents of [the subdivision]."

As previously discussed, the contract went on to establish the rates that residents can be charged for water, and to impose restrictions as to how rates can be increased. The contract further set a specific tapping fee that may be charged and again imposed restrictions on increasing that fee.

This is not a case in which members of the general public benefit incidentally and indirectly from a contract.[10] Instead, this is a case in which the contract clearly shows an intent to benefit the residents of a particular subdivision by providing them with a "better water

---

[8] See *Davis v. Whitford Properties*, 282 Ga. App. 143, 145 (1) (637 SE2d 849) (2006) (issues not raised and ruled on in the trial court are waived).

[9] (Citations and punctuation omitted.) *Davis v. Phoebe Putney Health Systems*, 280 Ga. App. 505, 508 (3) (634 SE2d 452) (2006).

[10] Compare *Page v. City of Conyers*, 231 Ga. App. 264, 265-268 (1) (499 SE2d 126) (1998).

supply system" and by establishing their rates and placing restrictions on rate increases. The residents in this case have standing as third-party beneficiaries of the contract.[11]

*Judgment affirmed in part and reversed in part in Case No. A07A1877. Judgment affirmed in Case No. A07A1878. Phipps and Mikell, JJ., concur.*

DECIDED MARCH 4, 2008.

*Charles C. Stewart, Jr.,* for appellants.

*Hall, Booth, Smith & Slover, Michael S. Meyer von Bremen, William B. Mallow,* for appellee.

---

[11] See *Murawski v. Roland Well Drilling,* 188 Ga. App. 760, 764 (2) (374 SE2d 207) (1988) (property owners were third-party beneficiaries of agreement which contained promises regarding rates which they could be charged for water).