A07A2330. SOUTHERN CRESCENT REHABILITATION AND RETIREMENT CENTER, INC. v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH.
(660 SE2d 792)

RUFFIN, Judge.

The Department of Community Health ("DCH") cancelled a certificate of need ("CON") that had been awarded to Southern Crescent Rehabilitation and Retirement Center, Inc. ("Southern Crescent"). Southern Crescent requested an administrative hearing to contest the cancellation. The hearing officer affirmed the cancellation, and the decision was incorporated into the final administrative decision of DCH. Southern Crescent sought judicial review, and the superior court affirmed the administrative decision. Southern Crescent then appealed to this Court. For reasons that follow, we also affirm.

The relevant facts show that on January 31, 1997, DCH awarded a CON to Southern Crescent to build a 40-bed nursing home facility. The initial duration of the CON was 12 months. Before construction commenced, Southern Crescent sought and obtained several pre-construction extensions, with the last one ending on January 31, 1999. Following one extension request, Southern Crescent received a letter from DCH that stated, in relevant part, that DCH rules

provide[d] for automatic extension provisions for projects involving new construction. For projects with a total project cost under $3,000,000.00 an applicant is entitled to an automatic twelve (12) month extension to the initial twelve (12) month duration of the CON if they submit certain information to the Agency during the initial twelve (12) month period. This required information includes confirmation that 1) the construction plans have been approved by the State Architect[,] . . . 2) verification that construction materials and equipment are on site, and 3) the submission of a signed construction contract with beginning and ending dates.

On January 29, 1999, Southern Crescent forwarded a letter to DCH, attaching certain progress reports and a copy of the construction contract, and stating that construction materials were on site. According to the contract, construction was "scheduled to commence March 15 or once the site plan receives approval from the county[,]" and substantial completion was expected by December 15, 1999. DCH responded by letter dated February 15, 1999, stating that Southern Crescent had complied with agency rules and that the CON was now valid through January 28, 2000.

According to Omar El Sawi, the owner of Southern Crescent, at some point during the month of January 1999, work began on the site to add a sewer line. Shortly thereafter, El Sawi experienced numerous personal problems, including a divorce and a protracted illness, that hindered work on the project. Thus, no construction occurred on the project for several years. Southern Crescent made periodic inquiries into the status of its CON, and on August 31, 2000 and again on April 1, 2002, Southern Crescent received letters informing it that there was no extension required once a project "has reached the construction phase." The second letter noted that the project "was in compliance with the initial performance standards and [had] entered the eighteen-month construction phase." If the construction was not completed during that time, DCH requested that Southern Crescent "keep [DCH] informed of the project's progress, estimate when it might be completed, and provide the final report at the appropriate time."[1]

On September 11, 2003, the architect for Southern Crescent submitted a "plans transmittal letter," which showed a construction

---

[1] In its brief, Southern Crescent contends that it "regularly communicated with DCH by telephone" during this time, but provides no record citations to support this contention. " 'This court will not consider factual assertions in the brief unsupported by the record.' " *Toombs v. Meyer M. Cardin Living Trust # 2*, 279 Ga. App. 682, 684 (1) (632 SE2d 410) (2006).

start date of October 15, 2003 and an estimated completion date of August 3, 2004. Upon receipt of the letter, the State's architect, Erik Hotton, drove by what he believed to be the construction site and saw no evidence of construction, such as equipment, access roads, or cleared trees. According to Hotton, that was his second inspection of the site. He also drove by the proposed site in 2001 and saw no signs of construction. On October 16, 2003, DCH sent El Sawi a letter informing him that the CON had expired on January 20, 1999 and was no longer valid. The letter was mailed to El Sawi at the address DCH had on file; however, it was returned to sender. On October 24, 2003, a letter was sent to the architect on the nursing home project, informing him that the CON had been cancelled. After DCH deemed the CON cancelled, construction began in earnest on the project, and the land was cleared and a construction trailer was installed on site. Thus, on October 25, 2004 — over one year later — DCH sent a cease and desist letter to El Sawi. Notwithstanding this letter, El Sawi constructed the nursing home. According to El Sawi, he never received the first letter from DCH, although he conceded that he did receive the cease and desist letter. He also conceded that he learned from the architect in December 2003 — before construction of the building began — that the CON had been cancelled.

Southern Crescent wrote DCH, contesting the cancellation of the CON and requesting a hearing. Following a hearing, the hearing officer found in favor of DCH. The officer noted the requirement of OCGA § 31-6-41 (b) that CON projects be completed within a reasonable time. The officer further noted that the administrative rules provided that, during the initial 12 months following issuance of a CON, the person holding the CON must provide the following documentation: "(i) that the construction plans have been approved by [DCH]; (ii) that a construction contract has been signed, specifically indicating beginning and completion dates; and (iii) that construction materials and equipment are on site *and construction of the project has actually begun.*"[2] The hearing officer found that because construction had not started by January 30, 1999 — the date the last pre-construction extension ended — the CON expired on that date.

The hearing officer's order was adopted as the final decision of DCH. Southern Crescent then petitioned for judicial review, and the superior court affirmed. On appeal, Southern Crescent contends that the superior court erred because: (1) the administrative decision was clearly erroneous in view of the substantial evidence; (2) the administrative decision was affected by error of law; (3) DCH should have been estopped from reversing its stance after Southern Crescent

---

[2] (Emphasis supplied.) Former Ga. Comp. R. & Regs. r. 272-2-.02 (3) (b) (3).

detrimentally relied upon letters from the agency; (4) the administrative decision was made upon unlawful procedure; and (5) the administrative decision was "arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion." We address each contention in turn.

1. In its first argument, Southern Crescent asserts that the administrative decision was clearly erroneous. Specifically, it argues that the CON did not expire on January 30, 1999, as found by the hearing officer — a finding that was adopted as DCH's final order and affirmed by the superior court. In reviewing this argument, we must keep in mind the standard of review. The hearing officer serves as the finder of fact.[3] And such decision of the hearing officer becomes the decision of DCH unless modified or reversed by the review board.[4] But

> the review board shall not reverse findings of fact made by the hearing officer unless the review board specifically finds that the hearing officer's findings of fact are not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions.[5]

If a party appeals to the Review Board, the Board's decision becomes DCH's final decision by operation of law.[6] Although the decision may be appealed to superior court, that court's review is limited.[7] The superior court

> may reverse or modify the final decision only if the appellant's substantial rights have been prejudiced because the procedures used (1) violated constitutional or statutory provisions; (2) exceeded the Department's statutory authority; (3) were unlawful; (4) were affected by legal error; (5) were not supported by substantial evidence; or (6) were arbitrary, capricious, or characterized by an abuse or unwarranted exercise of discretion.[8]

---

[3] See OCGA § 31-6-44 (g).

[4] See OCGA § 31-6-44 (h).

[5] Id.

[6] See OCGA § 31-6-44 (j).

[7] See OCGA § 31-6-44 (m).

[8] *Ga. Dept. of Community Health v. Satilla Health Svcs.*, 266 Ga. App. 880, 885 (1) (c) (598 SE2d 514) (2004).

Using these standards as our guideposts, the superior court properly affirmed the final decision of DCH. As noted by the hearing officer, the administrative rule in effect at the time required that, during the initial 12 months following issuance of a CON, the person holding the CON provide documentation that DCH approved the construction plans, that a construction contract — with start and completion dates — has been signed, and "that construction materials and equipment are on site *and construction of the project has actually begun.*"[9] Here, it is undisputed that Southern Crescent did not provide information to DCH that construction had actually begun before January 30, 1999. Rather, the letter sent by Southern Crescent's attorney in January 1999 indicated that construction was to start in March 1999.

As noted by Southern Crescent, however, it was not informed that, under the rules, it had to provide information that construction had actually commenced. To the contrary, the letters Southern Crescent received required only that the company provide verification that construction materials were on site and that there was a signed construction contract with start and end dates that had been approved by the State's architect. Pretermitting whether Southern Crescent was allowed to rely on DCH's letter regarding CON requirements, there was evidence from which the hearing officer could find that the CON had expired. Although El Sawi testified that sewer work began sometime in January 1999, the hearing officer found the testimony incredible. First, Southern Crescent's letter to DCH provided March 1999 as the construction start date. Moreover, the State's architect drove by the site at least twice — the second time in 2004 — and saw no evidence of construction. If, as Southern Crescent certified, the construction equipment was on site, then the hearing officer was authorized to find that the State's architect would have seen it.[10] Under these circumstances, substantial evidence supported the hearing officer's conclusion that the CON lapsed in January 1999.

2. Southern Crescent argues that DCH had the authority to grant extensions and, in fact, granted extensions to Southern Cres-

---

[9] (Emphasis supplied.) Former Ga. Comp. R. & Regs. r. 272-2-.02 (3). Although the agency rules were subsequently amended, the rules that were in effect at the time the CON was issued were applied.

[10] Southern Crescent argues that the architect would have been unable to see the sewer line work that was performed on the back of the property. However, the evidence Southern Crescent cites to support this argument is inconclusive at best. And the pictures taken from when construction began in earnest show that such construction would have been immediately apparent to the architect. Given this evidence, the hearing officer was authorized to conclude that construction had not begun.

cent, maintaining the validity of the CON. Under the administrative rules in effect in 1999, DCH had broad authority to grant extensions.[11] According to Southern Crescent, the two letters sent by DCH in August 2000 and April 2002 evidenced those extensions. However, both letters provide that no extension is needed once the project is in the 18-month construction phase. And, as Southern Crescent was aware, the project was not actually in an 18-month construction phase when it received the letters. Thus, we find Southern Crescent's argument in this regard unavailing.

3. Southern Crescent contends that DCH is estopped from cancelling the CON as the company detrimentally relied upon DCH's assertions that the CON remained valid. "In general, equitable defenses are unavailable against the [S]tate where their application would thwart a strong public policy."[12] However, if the application of the doctrine does not thwart public policy, equitable estoppel can be applied against DCH as long as its acts were not ultra vires.[13] Here, DCH asserts that its acts in allegedly extending the CON were ultra vires and thus estoppel should not apply. Pretermitting whether the acts were ultra vires, we find estoppel inapplicable. "It is a well-recognized maxim that he who seeks equity must do equity."[14] At the time construction on the project began in earnest, El Sawi and Southern Crescent knew that DCH had taken the position that the CON was invalid. Moreover, Southern Crescent began and completed construction in contravention of a cease and desist order. Under these circumstances, Southern Crescent is unable to avail itself of equitable remedies.[15]

4. According to Southern Crescent, DCH failed to provide legally sufficient notice of the "cancellation" of the CON. Specifically, Southern Crescent argues that DCH improperly revoked the CON under OCGA § 31-6-45. This statute provides, in pertinent part, that DCH "may revoke a [CON] after notice to the holder of the certificate and a fair hearing."[16] One of the grounds for revocation is the CON holder's failure to "fulfill reasonable performance and scheduling requirements specified by [DCH], by rule, [or] to assure reasonable

---

[11] See former Ga. Comp. R. & Regs. r. 272-2-.02 (6).

[12] *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 435 (2) (555 SE2d 800) (2001).

[13] See *Quillian v. Employees' Retirement System of Ga.*, 259 Ga. 253, 254 (4) (b) (379 SE2d 515) (1989).

[14] *Murawski v. Roland Well Drilling*, 188 Ga. App. 760, 765 (2) (374 SE2d 207) (1988).

[15] See id.

[16] OCGA § 31-6-45 (a).

progress toward timely completion of a project."[17] Here, DCH conducted no hearing before invalidating Southern Crescent's CON.[18] Thus, if the CON was revoked, the lack of a hearing would be problematic as the statute clearly requires a hearing *before* revocation.[19]

But here, the CON expired and was not revoked. Nothing in OCGA § 31-6-45 references the expiration of a CON. And, in interpreting this Code section, we apply the rules of statutory construction, which require that we construe the statute according to its plain language.[20] It follows that this statute has no application here.

5. In its final enumeration, Southern Crescent generally reiterates its prior arguments and asserts that it "would be fundamentally unjust and unfair to allow DCH to retroactively cancel [its] CON" given the money expended to construct the facility. For the reasons given above, we find this argument lacks merit.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MARCH 24, 2008 —
RECONSIDERATION DENIED APRIL 9, 2008 — 

*Balch & Bingham, Michael J. Bowers, David A. Lester*, for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Rhonda Meadows, Pamela S. Stephenson*, for appellee.

---

[17] OCGA § 31-6-41 (b); see also OCGA § 31-6-45 (a) (1).

[18] DCH contends that the hearing before the hearing officer constituted sufficient hearing under the statute. However, this hearing took place *after* the CON was allegedly revoked, so this argument is unpersuasive.

[19] See *William L. Bonnell Co. v. Coweta County Bd. of Tax Assessors*, 252 Ga. App. 151, 152 (1) (a) (556 SE2d 159) (2001) ("Words used in a statute should be given their ordinary and common meaning where the statutory language is plain and unambiguous, as here.").

[20] See id.; *City of Rincon v. Couch*, 276 Ga. App. 567, 570 (2) (623 SE2d 754) (2005).