### A10A0237. TACKETT v. GEORGIA DEPARTMENT OF CORRECTIONS.
(696 SE2d 359)

ADAMS, Judge.

Cliff W. Tackett, Jr., filed suit against the Department of Corrections ("DOC") asserting claims for breach of contract, promissory estoppel and intentional infliction of emotional distress in connection with his employment. After the parties filed cross-motions for summary judgment, the trial court granted summary judgment[1] to the DOC and denied Tackett's motion. Tackett appeals.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citation and punctuation omitted.) *Rosenberg v. Falling Water, Inc.*, 302 Ga. App. 78 (690 SE2d 183) (2009).

The record demonstrates that Tackett has held a number of positions with the State of Georgia, beginning in 1974 when he took a job as a transportation enforcement officer with the Department of Transportation. In August 2005, while working as a unit commander for the internal affairs section of the Department of Driver Services ("DDS"), Tackett received notice from the Georgia Peace Officers Annuity and Benefit Fund that his supplemental retirement had been frozen because the DDS was not considered a law enforcement entity at the time it was created. Concerned about his retirement benefits, Tackett submitted an application in September 2005 for a position as an internal affairs investigator with the DOC. Tackett interviewed for the position and on October 4, 2005, wrote a letter to Terry L. Mulkey, who was then the DOC's Director of Internal Affairs, acknowledging that he would be willing to accept a voluntary title demotion ("Demotion Letter"). Nevertheless, Tackett made it "very clear" to Mulkey during the interview process that although he was willing to take such a demotion, he would not accept a reduction in salary.

---

[1] The trial court granted summary judgment in favor of the DOC on three grounds: breach of contract, promissory estoppel and intentional infliction of emotional distress. But Tackett states in his appellate brief that he has abandoned his emotional distress claim, and we do not address that issue in this appeal.

Subsequently, Mulkey submitted a Personnel Action Request ("PAR") to Brian Owens, Assistant Commissioner of the DOC, recommending that Tackett be hired at his current salary. Attached to the form was a memorandum from Mulkey outlining Tackett's qualifications as justification for retaining Tackett's salary level ("Justification Memo"). Owens approved the request, and the DOC offered Tackett the job at the same salary he earned at the DDS.

On October 12, 2006, a group grievance was filed by 15 investigators in the internal investigations unit of the DOC alleging unethical and discriminatory hiring practices in connection with Mulkey's hiring of five investigators, including Tackett, between 2004 and 2006. The grievance complained about pay discrepancies, alleging that these investigators were unfairly paid higher salaries than investigators already employed by the DOC who performed the same or substantially similar duties. The grievance asserted that these hires violated DOC policies and the federal Equal Pay Act of 1963, 29 USC § 206 et seq. In particular, the grievance alleged that Tackett was hired at an annual salary of $52,409.28, which was more than $20,000 over the base salary for an investigator and $15,000 to $20,000 more than many of the incumbent investigators, some of whom had been with the DOC for over ten years and most of whom were earning under $40,000 per year.

The DOC investigated the allegations in the grievance and concluded that Mulkey had not followed department policies in hiring the five investigators, not only because the investigators were hired at higher salaries, but also because some of the positions were not advertised openly and fairly. The DOC concluded that the best solution for rectifying the situation was to develop an entirely new salary schedule to be applied equally to all investigators, even though the new system potentially could result in salary decreases for the higher paid investigators. The new system was based upon objective criteria of qualifications and merit, and every investigator was required to submit a form verifying their qualifications and experience for re-evaluation.

Following the re-evaluation, most investigators received a salary increase, but Tackett and one other investigator received a salary decrease. Thus, approximately one and one-half years after Tackett was hired, his annual salary was reduced from $55,029.60 to $47,065.20. The memorandum informing Tackett of this change stated that the salary reduction was "not a disciplinary measure but rather a necessary step to rectify apparent inequities in salaries of incumbents performing the same job." Tackett subsequently filed this action asserting that the DOC breached his contract of employment by reducing his salary.

312

1. Under OCGA § 50-21-1 (a), "[t]he defense of sovereign immunity is waived as to any action ex contractu for the breach of any *written contract* existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities." (Emphasis supplied.) Tackett argued below that Section VI. E. 2. of the DOC policy manual established a binding contract between the parties. That section, governing employee promotions, demotions, transfers, and salaries, provides that "[s]alary reductions may be made for disciplinary purposes, budgetary purposes, or on a voluntary basis."[2] Tackett argued below that under this provision, his salary could only be reduced for one of the stated purposes, and because the reduction was not made voluntarily or for disciplinary or budgetary reasons, the DOC breached the contract. But the trial court found that this DOC policy was permissive and thus did not create a binding written contract.

"An employee manual setting forth certain policies and information concerning employment is not necessarily viewed as a contract." (Citation and punctuation omitted.) *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1) (511 SE2d 284) (1999). While under Georgia law, employment policies relating to additional compensation plans, such as retirement benefits or insurance plans, may amount to a binding contract, this Court has previously found that "personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment; failure to follow the termination procedures contained in them is not actionable." (Citation omitted.) *Doss v. City of Savannah*, 290 Ga. App. 670, 677 (5) (660 SE2d 457) (2008). See also *Ellison*, 236 Ga. App. at 186 (1); *Jones v. Chatham County*, 223 Ga. App. 455, 459 (5) (477 SE2d 889) (1996). No additional compensation plan is at issue in this case; rather the pertinent policy simply lists three bases for decreasing salaries. We find that this policy did not constitute a written contract of employment with Tackett, and thus any violation of the policy would not give rise to an actionable claim against the DOC. See *Ellison*, 236 Ga. App. at 186 (1) (holding promotion policies in employee manual did not amount to a binding contract).

Moreover, even if the policy could be construed as a contract, we agree with the trial court that the policy language does not provide the exclusive bases for decreasing salaries. Rather, the language providing that salary reductions "may be made" for certain reasons is permissive, not mandatory, and it does not create a contractual

[2] This is the only portion of the DOC policy manual contained in the record and thus is the only provision considered by the trial court.

requirement that the DOC only reduce salaries for the stated reasons. See *Johnson v. Fulton County*, 235 Ga. App. 277, 279 (1) (a) (509 SE2d 355) (1998) (finding language that a "regular annual salary increase may be granted to an employee" to be permissive). See also *Alday v. Decatur Consolidated Water Svcs.*, 289 Ga. App. 902, 904 (2) (658 SE2d 476) (2008).

2. Tackett also argues for the first time on appeal that the trial court erred in granting summary judgment to the DOC because another written contract existed between the parties. He asserts that, taken together, the Demotion Letter he signed, the PAR signed by Owens and the Justification Memo initialed by Mulkey constitute contemporaneous writings signed by the parties, constituting a written contract to pay his existing salary. The DOC raised the contrary argument below in support of its summary judgment motion, asserting that Tackett's claim was barred by sovereign immunity because no valid written contract existed between the parties and specifically arguing that these documents did not constitute such a contract. Tackett never responded to that argument, however, and the trial court never addressed it.

Thus Tackett based his claim for breach of a written contract solely upon his argument that the DOC violated its own policy manual and "never asserted at the trial level that another enforceable agreement supported [his] cause of action. We will not reverse an award of summary judgment based on an argument raised for the first time on appeal." (Footnote omitted.) *Jones v. Equipment King Intl.*, 287 Ga. App. 867, 869 (1) (652 SE2d 811) (2007). "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it." (Punctuation and footnote omitted.) *Neely v. City of Riverdale*, 298 Ga. App. 884, 888 (4) (681 SE2d 677) (2009). See also *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

Moreover, even if we were to assume arguendo that the three documents could be construed as a written contract, they would provide no basis for Tackett's breach of contract claim. The documents only state that Tackett would be hired at his existing salary, but nothing in those documents guarantees the salary would continue for any definite period or that the salary could not be decreased in the future. See *Pickle Logging v. Ga. Pacific Corp.*, 276 Ga. App. 398, 400 (623 SE2d 227) (2005) (under Georgia law, oral promise as to employment contract for indefinite time period unenforceable and violation of its terms will not support breach of contract claim).

3. Tackett also asserts that the trial court erred in holding that promissory estoppel does not apply to bind the DOC in this case. The trial court found that sovereign immunity barred Tackett's promissory estoppel claim.

YALE LAW LIBRARY

The trial court is correct that "[t]he General Assembly has enacted no statute [specifically] waiving sovereign immunity for equity claims against the state." *Dollar v. Olmstead*, 232 Ga. App. 520, 522 (2) (502 SE2d 472) (1998). And "[p]romissory estoppel is an equitable doctrine designed to prevent the intricacies and details of the law from frustrating the ends of justice." (Citation and punctuation omitted.) *Rental Equip. Group v. MACI, LLC*, 263 Ga. App. 155, 158 (1) (b) (587 SE2d 364) (2003).

But we need not reach the issue of whether the DOC is immune from Tackett's claim because the principle of promissory estoppel has no application in this case. "Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration." *Brown v. Rader*, 299 Ga. App. 606, 611 (2) (a) (683 SE2d 16) (2009). As noted above, the DOC's alleged promise to Tackett was for an indefinite duration, and thus cannot be the basis for a claim of promissory estoppel. See *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 413 (5) (634 SE2d 162) (2006); *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985). Cf. *Blue Ridge Telephone Co. v. City of Blue Ridge*, 161 Ga. App. 452, 455-456 (3) (288 SE2d 705) (1982) (where "city's acquiescence did not carry any promise, explicit or implicit, that it would allow [existing arrangement] to continue for any definite time or for any time into the future whatsoever," no basis existed for restraining city's exercise of its power to change arrangement).

Accordingly, we affirm the trial court's grant of summary judgment in favor of the DOC and its denial of summary judgment to Tackett.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 4, 2010 — 

*Donald C. English*, for appellant.

*Thurbert E. Baker, Attorney General, Annette M. Cowart, Senior Assistant Attorney General, Shelley S. Seinberg, Assistant Attorney General*, for appellee.