**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 18, 2015**

# In the Court of Appeals of Georgia

A15A0381. SHELNUTT et al. v. THE MAYOR AND ALDERMEN
OF THE CITY OF SAVANNAH et al.

MCMILLIAN, Judge.

Christopher Shellnutt and 49 other firefighters (the "Firefighters") from the City of Savannah appeal the trial court's grant of a motion to dismiss and motion for judgment on the pleadings filed by the Mayor and Alderman of the City of Savannah (the "City") and Stephanie Cutter, the Savannah city manager, as to their claims for breach of contract.[1] The Firefighters asserted in their "First Amended and Recast Complaint" that the City's written "Pay Policy" created a contract between the City

---

[1] The trial court also granted the City's and Cutter's motions as to the Firefighters' claims for promissory estoppel and attorney fees, but they do not contest the grant of judgment as to those claims on appeal.

and the Firefighters and that the City breached that contract by paying them less than they were owed under the terms of the Pay Policy.

In considering the trial court's decision on a motion to dismiss and/or a motion for judgment on the pleadings, we apply a de novo review and thus "owe no deference to the decision of the court below." *Pryce v. Rhodes*, 316 Ga. App. 523, 523 (729 SE2d 641) (2012) (motion for judgment on pleadings). See also *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422, 423 (762 SE2d 138) (2014). Moreover, we must consider all well-pled material allegations on the Firefighters' complaint as true, with all doubts resolved in their favor. *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007) (motion to dismiss); *Early v. MiMedx Group, Inc.*, 330 Ga. App. 652, 654 (768 SE2d 823) (2015) (motion for judgment on the pleadings). "We may also consider any exhibits attached to and incorporated into the complaint and the answer, also construing them in the appellant's favor." *Stafford v. Gareleck*, 330 Ga. App. 757, 758 (769 SE2d 169) (2015) (motion to dismiss). See also *Early*, 330 Ga. App. at 654 (motion for judgment on the pleadings). Nevertheless, a court should not grant a motion to dismiss unless "the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof[.]" (Citation omitted.)

2

*Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014). And "[a] motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment." (Citation and punctuation omitted.) *Sherman v. Fulton County Board of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010).

The complaint alleges that the Firefighters are all supervisors with the City's Bureau of Fire and Emergency Services, some of whom are classified as "exempt" for pay purposes and some of whom are classified as "non-exempt."[2] The City's Pay Policy includes provisions outlining changes in compensation for employees when promoted to a higher position, and those provisions have undergone a number of revisions since 1998.[3] From 1998 to November 2009, the Pay Policy provided, in pertinent part, that "[a]n employee promoted to a higher classification shall receive an increase of five percent above his/her current pay," and "[w]hen the present rate of the promoted employee is five percent or more below the minimum of the new pay

---

[2] These categories relate to an employee's classification under the Fair Labor Standards Act.

[3] Copies of the Pay Policy attached to the "First Amended and Recast Complaint" reflect that since 1998, the policy was revised on January 1, 2001, November 2, 2002, January 1, 2005, July 25, 2005, August 21, 2006, January 1, 2007, November 2, 2009, June 28, 2012, September 8, 2013, and possibly on March 30, 2010.

grade, he/she will receive the minimum of the new pay grade." And during the same time period, the Pay Policy also provided that an individual promoted to an "exempt" supervisory position "shall receive an increase of 7.5% above his/her current pay," with the qualification that if "the present rate of the promoted employee is 7.5% or more below the minimum of the new pay grade, he/she will receive the minimum of the new pay grade." As of November 2009, the percentage pay increase for employees "promoted to a higher classification" was raised to ten percent "up to the maximum of the new pay range," and the language providing for a 7.5% pay increase for "exempt" supervisory positions was deleted.

Additionally, as of July 2005, the Pay Policy was amended to include a provision that mandated a one-time promotional pay increase for an employee promoted to a supervisory position, whether exempt or non-exempt, to "a minimum of 5% above the highest paid employee to be supervised at the time of the promotion." This language was removed from the Pay Policy in the November 2, 2009 revision but was reinserted in the September 8, 2013 revision of the Pay Policy.

The Complaint, as amended, alleges that each of the 50 Firefighters has received a promotion since 2002 but did not receive the pay increases outlined in the City's Pay Policy. They assert that Cutter, or her designees, failed to enforce the

4

City's pay requirements as required by the Pay Policy, but rather "determine[d] pay based on personal favoritism and bias."

In response, the City and Cutter rely on language that appears in all versions of the Pay Policy, which provides that "[e]xceptions to or interpretation of these rules and policies will be referred to the Human Resources Director and/or City Manager for resolution. The City Manager has the authority to make exception to these policies as deemed necessary." They assert that this language demonstrates that the policies are discretionary and not enforceable contract terms.

The City and Cutter also cite disclaimer language found in the December 2004, the November 2006, and the January 2014 editions of the "City of Savannah Employee Handbook" (the "Handbook"), which they attached to their answer.[4] Each version of the Handbook contains a "NOTICE TO ALL EMPLOYEES," stating that the Handbook is

> only a general guide to the City's employment policies and to some of your benefits. . . . It is informational only. From time to time, the City reviews its policies, procedures, and benefits and makes revisions based on the need for or desirability of changes. Thus, any policy, procedure,

---

[4] Both the complaint and the answer were amended , and the Handbooks were attached to the most recent answer filed on behalf of the City and Cutter.

or benefit outlined in this handbook may be modified, decreased, eliminated or increased at any time with or without advance notice. In addition, the City remains free to decide in all cases whether to apply the policies expressed herein to any particular set of circumstances.

The Handbook further provided that it "does not constitute an expressed or implied contract. The employee may separate from his/her employment at any time; the City of Savannah reserves the right to do the same."

However, the December 2004 and November 2006 versions of the Handbook do not include or expressly incorporate the City's Pay Policy. Rather, the Handbooks list a number of employment-related topics and for "specific information," refer the employee to the City's Pay Policy, which "[could] be found on the City's P: drive," as well as the Fair Labor Standards Act Handbook, which "[could] be found on the City's Intranet or obtained through [the employee's] department director." The City and Cutter have not pointed us to any provision in either the 2004 Handbook and/or the 2006 Handbook expressly incorporating the Pay Policy into its terms, and we have found none. Moreover, none of the versions of the Pay Policy from November 2, 2002 through June 28, 2012 expressly incorporate or reference either the Handbook or its disclaimer language. However, the January 2014 version of the

6

Handbook contains the September 8, 2013 version of the Pay Policy in full and no longer refers employees to the City's P: drive for specific information.

1. In granting the City's motion, the trial court treated the Pay Policy and the Handbook as one document, finding, for example, without citation or analysis, that the provision of the Pay Policy granting a promoted employee a raise of five percent above the highest paid employee to be supervised "was first incorporated into the . . . Handbook" as of July 2005. Thus, the trial court relied on the disclaimer language of the Handbook in finding that "throughout the *policy* the City makes clear that this is not a contract, that the City remains free to decide whether to apply the policies to a particular set of circumstances and may modify, decrease, eliminate or increase any policy or benefit at any time without advance notice." (Emphasis supplied.) And the trial court concluded that "the instant pay policy and employee manual are not a binding contract."

However, we find no basis for treating the Pay Policy as part of the Handbook prior to January 2014,[5] when the Handbook was expanded to include the Pay Policy within its terms. Prior to that time, the Handbook merely directed employees to refer

_____

[5] At oral argument, counsel for the Firefighters stated that the claims in this case were not based on the Pay Policy found in 2014 Handbook; accordingly, we do not address that policy in this case.

7

to a digital version of the Pay Policy on the City's hard drive for more information. Nor do we see any basis in the text for treating the Handbook and its disclaimers as part of the Pay Policy as neither document expressly incorporated the other. Thus, we conclude that the Handbook and the Pay Policy in this case must be considered separately, and we find that while the Handbook contains disclaimer language and states that it "does not constitute an express or implied contract," the Pay Policy is not subject to these disclaimers. See *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 596-597 (2) (417 SE2d 163) (1992) (handbook in effect at the time of hiring controls, and disclaimers added to later version of the handbook do not alter the result).

2. We therefore must turn to the Pay Policy to determine whether the Firefighters can assert a contractual claim against the City based on its terms. The City asserts that the Pay Policy cannot constitute a contract because it does not involve "additional compensation" such as vacation pay, disability pay, severance pay, insurance, or retirement benefits, but instead addresses the City employees' basic salary or pay, which it asserts can never give rise to a contractual claim.[6] We disagree.

---

[6] In support of this argument, the City relies on this Court's decision in *Tackett v. Georgia Dept. of Corrections*, 304 Ga. App. 310, 312 (1) (696 SE2d 359) (2010), and cases cited therein. In that case, the Court drew a distinction between

8

The test in this case is not whether the Pay Policy addresses "additional compensation" as opposed to salary or wages. Rather, the test is whether the language of the particular Pay Policy at issue could give rise to a contractual claim by the Firefighters, or stated in the alternative, whether the allegations of the complaint disclose with certainty that the Firefighters would not be entitled to relief under any provable facts they could assert in support of their contractual claim.

From the documents provided in the record, it appears that the Firefighters' employment with the City is terminable at will.[7] The Handbook provides that an "employee may separate from his/her employment at any time; the City of Savannah

employment policies relating to "additional compensation plans, such as retirement benefits or insurance plans," which have been found to create binding contracts, and "personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment; failure to follow the termination procedures contained in them is not actionable." (Citation and punctuation omitted.) Id. The policy at issue in *Tackett* listed three bases on which an employee's salary "may be" reduced, and the Court held that the policy did not create a contract between the parties, citing a case holding that promotion policies in a manual did not create a contract. But *Tackett* does not hold that a policy, like the one in this case, setting forth the specific amount of an employee's compensation at the time of promotion can never constitute a contract. Rather, we interpret *Tackett* as holding that the permissive policy at issue in that case was more akin to policies setting forth certain procedures to be followed in connection with employment decisions than to policies providing for additional amounts or kinds of compensation.

[7] We note that the City asserted at oral argument that the Firefighers were employed on an at-will basis.

9

reserves the right to do the same." And the Pay Policy does not provide for a definite term of employment. Where no evidence shows that an employee was hired for a definite term, his or her employment is at-will. See *Goddard v. City of Albany*, 285 Ga. 882, 885 (3) (684 SE2d 635) (2009).

Although terminable-at-will employment does not give an employee a contractual right to remain employed,[8] an at-will employment relationship can give rise to certain contractual rights. See *Walker Elec. Co. v. Byrd*, 281 Ga. App. 190, 192 (635 SE2d 819) (2006); *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga. App. 471 (180 SE 853) (1935). "In a terminable-at-will employment contract the original terms for compensation are enforceable for that work actually performed under the contract." (Citation and punctuation omitted.) *Biven Software, Inc. v. Newman*, 222 Ga. App. 112, 115 (2) (473 SE2d 527) (1996). "[U]nder such circumstances, the plaintiff [has] a right of action under the contract for the amount of earned [compensation] due him in accordance with the agreement." (Citation and punctuation omitted.) *Walker Elec.* 281 Ga. App. at 192. And although in an at-will relationship, a promise of a future

---

[8] Nothing in this opinion should be interpreted as holding that the Pay Policy is legally sufficient to create an implied contract for a definite term of employment. See, e.g., *Goddard*, 285 Ga. at 885-886 (3); *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1) (511 SE2d 284) (1999).

change in compensation generally "is unenforceable since neither party is bound to continue performance under the contract at all,"[9] this rule does not apply to a promise of future compensation made at the beginning of the employment relationship. Such a promise "is enforceable, though it would not be if made pending the term or after performance was complete." (Citation and punctuation omitted.) *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 361 (5) (359 SE2d 148) (1987) (holding that employer's oral promise to pay an annual pre-tax bonus of a certain percentage of profits made at the beginning of employment was not unenforceable on the ground that it was an executory promise of future compensation, but was unenforceable because it violated the Statute of Frauds). The Georgia Supreme Court has explained that "[t]o be enforceable, a promise of future compensation must be made at the beginning of the employment. However, the promise of future compensation must also be for an exact amount or based upon a formula or method for determining the exact amount of the [compensation]." (Citation, punctuation, and emphasis omitted.) *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995) (finding that promise of future compensation for at-will employee was unenforceable where the *amount* of

_____

[9] (Citation and punctuation omitted.) *Bivens Software*, 222 Ga. App. at 115 (2). See also *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 361 (6) (359 SE2d 148) (1987).

11

the bonus was based in part on a formula and in part on company president's discretion). Moreover, this Court has held that a promise to pay made at the beginning of employment conditioned on a future event may be enforceable in a terminable-at-will contract. See *Transkey, Inc. v. Adkinson*, 225 Ga. App. 457, 460 (1) (484 SE2d 30) (1997) (finding jury issue as to whether condition precedent to payment of bonus existed and whether it was definite enough to be enforceable).

Applying these principles, we cannot say that the complaint discloses with certainty that the Firefighters could not be entitled to contractual relief under any state of provable facts. The complaint alleges that each of the 50 firefighters was promoted to a supervisory position beginning in 2002 but did not receive the increase in salary provided for in the Pay Policy. Each version of the Pay Policy, at least beginning in 1998, provided for an automatic increase at a definite percentage upon promotion to a supervisory position. Thus, each firefighter may be able to point to the version of the Pay Policy in effect at the time he or she was hired and show that it provided for a definite percentage pay increase conditioned on promotion to a supervisory position. And taking the allegations of the complaint as true, each firefighter may be able to show that the condition precedent for the increase in salary was met when he or she was promoted to such a position. Thus, each firefighter may be able to assert

12

a contract claim to receive compensation at the higher rate for work actually performed as a supervisor following his or her promotion.

3. The City asserts, however, that the Pay Policy cannot be considered a binding contract because it grants the City Manager authority "to make exception to these policies as deemed necessary." We disagree that this determination can be made at this juncture in the proceedings.

It is well settled that "[w]hen the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Citations and punctuation omitted.) *Advanced Technology Svcs., Inc. v. KM Docs, LLC*, 330 Ga. App. 188, 194 (2) (767 SE2d 821) (2014). Moreover,

> [t]he terms and phrases contained in a contract must be given their ordinary meaning. It is equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance . . . .

(Citations and punctuation omitted.) *Unified Government of Athens-Clarke County v. McCrary*, 280 Ga. 901, 903 (635 SE2d 150) (2006).

13

Under the terms of the Pay Policy, the City Manager is given authority to make "exception" to the policy where "deemed necessary." The term "exception" is commonly defined to mean "something that is excluded from a rule's operation,"[10] "a person or thing that . . . does not follow a rule,"[11] or "a case where a rule does not apply."[12] These definitions necessarily imply the existence of a rule that is generally followed, from which the exception deviates. And, in fact, the Pay Policy uses mandatory language in setting the pay increases, providing that promoted employees "*shall* receive" or "*will* receive" the specified raise in pay. Thus, we interpret this language to mean that the City Manager should apply the salary increase specified in the Pay Policy unless she determines that an exception is "necessary." Compare *Johnson v. Fulton County*, 235 Ga. App. 277, 279 (1) (509 SE2d 355) (1998) (personnel policy stating that salary increases "*may* be granted" to an employee upon the recommendation and approval of county employees does not require that the

---

[10] Black's Law Dictionary (10th ed. 2014).

[11] Oxford Advance Learner's Dictionary, online at http://www.oxforddictionaries.com/definition/english/exception.

[12] Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/exception.

county pay raises to all employees, but rather gives county the discretion whether to award raises).

The term "necessary" has been defined as "absolutely needed,"[13] and "[n]eeded to be done, achieved, or present; essential."[14] Accordingly, we do not interpret the language of the Pay Policy as granting the City Manager unfettered authority to ignore the policy's requirements for pay raises. Rather, we find that she must apply the policy unless, in the exercise of her discretion, she determines that an exception is essential or needed. Thus, we find that the language of the policy requires the exercise of such discretion in each particular case of promotion.

In addition, where "the manner of performance is left more or less to the discretion of one of the parties to the contract, [that party] is bound to the exercise of good faith." (Citation and punctuation omitted.) *Rogers v. Farmers & Merchants Bank*, 247 Ga. App. 631, 633 (545 SE2d 51) (2001). See also *Rigby v. Boatright*, 330 Ga. App. 181, 184 (1) (767 SE2d 783) (2014); *Ameris Bank v. Alliance Investment & Mgmt. Co., LLC*, 321 Ga. App. 228, 234 (3) (a) (739 SE2d 481) (2013). Thus, we

---

[13] Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/necessary.

[14] Oxford Advance Learner's Dictionary, online at http://www.oxforddictionaries.com/definition/english/necessary.

find that the Pay Policy requires the City Manager to exercise his or her discretion in good faith.

And in Georgia,

> [a] decision that is made for arbitrary or capricious reasons, is based on an improper pecuniary motive, or is predicated on dishonesty or illegality is *not* made in good faith. Furthermore, a decision can be so grossly erroneous, as where there is a total absence of any factual evidence to support it, that it creates an inference of bad faith and dishonest judgment. Whether a party exercises good faith and honest judgment in the performance of a contract is a question of fact[.]

(Citations and punctuation omitted; emphasis supplied.) *Rigby*, 330 Ga. App. at 185 (1). The complaint, as amended, asserts that Cutter determined pay "based on personal favoritism and bias," and we cannot say at this early pleading stage of the litigation that the Firefighters will be unable to present evidence demonstrating that Cutter failed to exercise her discretion or that she did not act in good faith in exercising her discretion. Accordingly, the discretionary language of the Pay Policy does not demand dismissal as a matter of law.[15]

---

[15] We note that we address only the issue ruled upon by the trial court below and argued by the parties on appeal, and we expressly do not address any other defenses or arguments raised by the City and Cutter below.

16

For these reasons, we reverse the trial court's order granting the City's motion to dismiss and/or for judgment on the pleadings.

*Judgment reversed. Barnes, P. J., and Ray, J., concur*.