**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2018**

# In the Court of Appeals of Georgia

A17A1944. HANDBERRY v. STUCKEY TIMBERLAND, INC.

ELLINGTON, Presiding Judge.

Marie Handberry, as surviving spouse and executor of the estate of William Donald Handberry, Sr., ("the decedent") contends that the Superior Court of Dodge County erred in dismissing part of her wrongful death complaint against Stuckey Timberland, Inc. ("Stuckey"). Because the trial court properly granted Stuckey's partial motion to dismiss for failure to state a claim given the applicability of the Recreational Property Act, OCGA § 51-3-20 et seq., ("the RPA") and OCGA § 27-3-1 (e), which extends the protections of the RPA to owners who allow entry onto their land for hunting, we affirm.

On appeal of a trial court's ruling on a motion to dismiss, our review is de novo. *Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006). "However, we

construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted). *Ga. Dept. of Community Health v. Data Inquiry*, 313 Ga. App. 683 (722 SE2d 403) (2012). Our role is "to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Citation, punctuation and footnote omitted.) *Penny v. McBride*, 282 Ga. App. at 590. See also *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006) (on appeal of a motion for judgment on the pleadings, "the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law") (citation and punctuation omitted). Additionally, when ruling on a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings, the courts may consider written instruments attached to and incorporated into the complaint and answer.[1] See OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Trop, Inc. v. City of Brookhaven*, 296

---

[1] In granting the motion to dismiss, the superior court considered the terms of the hunting lease, which was attached to and incorporated into Stuckey's answer.

2

Ga. 85, 89 (2) (764 SE2d 398) (2014); *Shelnutt v. Mayor and Aldermen of the City of Savannah*, 333 Ga. App. 446 (776 SE2d 650) (2015).

Handberry alleged that Stuckey owns and manages real estate in middle Georgia, including 488.92 acres in Jefferson County. In June 2015, Stuckey leased the Jefferson County property to Robbie Brett "only for fishing and hunting purposes." The lease expressly contemplated that Brett's "agents, servants, employees, and guests" would be permitted access to the property. It further provided that no guest of Brett's "shall at any time exercise any . . . right or privilege [under this agreement] except and in accordance with this agreement" and only after signing a release and indemnity agreement in favor of Stuckey.

After entering into the lease, Brett formed a hunting club with several friends, including the decedent, who paid a portion of the cost of Brett's lease so that he could share in the right to enter the property and hunt. On July 25, 2015, the decedent entered onto the property to look "at the property in preparation for hunting there at a later time." He rode a four-wheel vehicle over an abandoned well concealed by tall grass, and the vehicle flipped over. He was ejected from the vehicle and trapped inside the well, where he died.

Handberry sued Stuckey, alleging that it had both actual and constructive knowledge of the well, that it had a duty to warn against dangerous conditions on the property, that it was required to inspect the property, that its conduct was willful and malicious as well as negligent, and that it's actions had proximately caused her husband's death. In the factual averments of the complaint, Handberry alleged that the decedent was "not hunting" at the time of the incident, but that he was scouting hunting locations. Stuckey filed a partial motion to dismiss, partial motion for judgment on the pleadings, and motion to strike, asking the court to dismiss claims based on ordinary negligence and to strike any references to constructive knowledge and a duty to inspect. Stuckey argued that either: (1) the decedent was on the property for hunting purposes, in which case the RPA precluded liability for claims of negligence against Stuckey; or (2) the decedent was not on the property for hunting purposes, in which case he was trespassing, and Stuckey could only be liable for causing willful and wanton injury, which requires actual knowledge of the peril. The trial court agreed, granting the partial motion to dismiss and motion to strike "[a]ll allegations of negligence and constructive knowledge[.]" The trial court did not

4

dismiss those claims based upon actual knowledge of the peril and willful or malicious conduct. It is from this order that Handberry appeals.[2]

The stated purpose of the RPA "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." OCGA § 51-3-20.

> In order to achieve this purpose, the RPA specifies that an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes may not be held liable for personal injuries resulting from unsafe or defective conditions existing on the premises, unless such injuries resulted from willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(Citations and punctuation omitted.) *South Gwinnett Athletic Assn. v. Nash*, 220 Ga. App. 116, 117 (1) (469 SE2d 276) (1996). See OCGA §§ 51-3-23; 51-3-25 (1). The protections of the RPA also extend to "[a]ny owner of land, lessee of land, or lessee of the game or fishing rights to land who gives permission to another person to hunt, fish, or take wildlife upon the land with or without charge[.]" OCGA § 27-3-1 (e). In

---

[2] This Court granted Handberry's application for an interlocutory appeal to consider the application of the RPA under the circumstances of this case.

5

order to establish an exception to this limitation of liability based on a willful or malicious failure to guard or warn against a dangerous condition, a plaintiff must show that the owner had actual knowledge of the dangerous condition. *Collins v. City of Summerville*, 284 Ga. App. 54, 56 (643 SE2d 305) (2007). "Constructive knowledge is not sufficient, and no duty to inspect is imposed on the property owner." (Footnote omitted.) Id. Whether the RPA applies to the facts of a case is a question of law for the court. *Gayle v. Frank Callen Boys & Girls Club, Inc.*, 322 Ga. App. 412, 414 (745 SE2d 695) (2013).

As the trial court correctly determined, the decedent's visit to the property to scout it for future hunting fell within the legal definition of hunting. See OCGA § 27-1-2 (39) ("'Hunting' means pursuing, shooting, killing, taking, or capturing wildlife or feral hogs. This term also includes acts such as placing, setting, drawing, or using any device used to take wildlife or feral hogs, whether any such act results in taking or not, and *includes every act of assistance to any person in taking or attempting to take* such wildlife or feral hogs.") (emphasis supplied). The decedent's act of scouting hunting locations was an act of assistance to himself and the members of the hunting club in the taking of wildlife; therefore, the court correctly concluded that the RPA precluded liability unless the decedent's death was proximately caused by Stuckey's

6

willful or malicious failure to guard or to warn against a known dangerous condition. See *Collins v. City of Summerville*, 284 Ga. App. at 56. In the alternative, the trial court also concluded that, if the decedent was not on the property for the permitted hunting purposes, he was a trespasser to whom Stuckey owed only a duty "to refrain from causing a willful and wanton injury" pursuant to OCGA § 51-3-3 (b) ("A lawful possessor of land owes no duty of care to a trespasser except to refrain from causing a willful or wanton injury."). We agree.

Handberry argues that the decedent was on the property with Brett's permission, not Stuckey's. He contends, therefore, that because Stuckey did not *directly* give the decedent its permission to be on the land, it is not protected by the RPA. He argues that the RPA, as applied to those who enter onto property to hunt or fish pursuant to OCGA § 27-3-1 (e), extends only to an owner or lessee "who gives permission *to another person* to hunt." (Emphasis supplied.) OCGA § 27-3-1 (e). This argument is without merit for the following reasons.

The plain language of the lease shows that Stuckey had, in fact, given permission not just to Brett but to Brett's guests to be on the leased property for hunting purposes. Therefore, the decedent, as a member of the class of people authorized to be on the property, had Stuckey's express or direct permission to enter

7

upon the land for hunting purposes. Further, even though the lease does not specifically name the decedent and grant permission to him individually, that does not alter the application of the RPA to this case. OCGA § 27-3-1 (e) provides that

> [a]ny owner of land, lessee of land, or lessee of the game or fishing rights to land who gives permission to another person to hunt, fish, or take wildlife upon the land with or without charge *shall be entitled to the same protection from civil liability* provided by Article 2 of Chapter 3 of Title 51 for landowners who allow the public to use their land for recreational purposes without charge.

Article 2 of Chapter 3 of title 51 includes OCGA § 51-3-23, which expressly provides that an owner's permission may be direct or indirect.[3] Though Brett, as the lessee of the land, was the one who personally invited the decedent to use the land, he was doing so pursuant to a lease that authorized him to invite guests onto the property for hunting purposes, thereby extending Stuckey's grant of permission to use the property for hunting purposes. Thus, even if Stuckey's grant of permission to the decedent can be construed to be indirect through Brett, the RPA nevertheless applies under these circumstances. See OCGA § 51-3-23.

---

[3] OCGA § 51-3-23 provides, in relevant part, that "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby" incur certain enumerated liabilities.

We also note that, if the decedent had entered onto the property for a purpose not contemplated under the lease agreement, his status with respect to Stuckey would have been that of a trespasser.[4] The plain language of the lease authorizes Brett and his guests to enter onto the property, but "only for hunting and fishing purposes." Although Brett may have invited the decedent onto the property for what Handberry argues does not qualify as hunting, Stuckey gave neither Brett nor the decedent permission to use the property for anything other than hunting or fishing purposes, and Brett can convey no greater right to use the property than he obtained under the lease.[5] Thus, if the decedent's use of the property was for anything other than an authorized purpose, it was wrongful, making him a trespasser. See *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 633-634 (658 SE2d 137) (2008) (a trespasser is one who, even though peacefully or by mistake, wrongfully enters upon property owned or occupied by another). And, generally, a landowner owes no duty

---

[4] In a premises liability case, a person may have more than one status at the same time in relation to different entities. See, e.g., *Chambers v. Peacock Constr. Co.*, 115 Ga. App. 670, 675-677 (4), (5) (155 SE2d 704) (1967) (plaintiff was invitee of general contractor and licensee of subcontractor).

[5] See *Powell v. Norman Elec. Galaxy*, 255 Ga. App. 407, 409 (1) (565 SE2d 591) (2002) (Pursuant to OCGA § 44-7-11, a tenant "has no rights beyond the use of the land actually conveyed or rented.")

to a trespasser except to avoid "willfully or recklessly injur[ing] him." *Harrison v. Plant Improvement Co., Inc.,* 273 Ga. App. 884, 886 (2) (616 SE2d 123) (2005) (citing *Trammell v. Baird*, 262 Ga. 124 (413 SE2d 445) (1992)). Further, until the landowner "knows of the peril to the trespasser, there can be no duty to warn the trespasser." (Citation and punctuation omitted.) *Crosby v. Savannah Electric &c. Co.*, 114 Ga. App. 193, 207 (150 SE2d 563) (1966). And the owner owes no duty to a trespasser "to inspect the premises or to prepare a safe place for his reception." (Citations omitted.) Id. at 202.

Given the applicability of the RPA to this case, Handberry's complaint discloses with certainty that she would not be entitled to relief under any state of provable facts for her claims of negligence based on constructive knowledge, ordinary diligence, or a duty to inspect for and to warn of unknown perils. For these reasons, Handberry has not shown legal error below and the judgment of the superior court is, therefore, affirmed.

*Judgment affirmed. Andrews and Rickman, JJ., concur*.