**THIRD DIVISION**
**GOBEIL,**
**COOMER, and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A1667. SHELNUTT et al. v. THE MAYOR AND ALDERMEN
OF THE CITY OF SAVANNAH et al.

COOMER, Judge.

This is the second appearance of this case before this Court. In *Shelnutt v. Mayor* ("*Shelnutt 1*"), firefighters from the City of Savannah appealed the trial court's grant of a motion to dismiss and motion for judgment on the pleadings filed by the Mayor and Aldermen of the City of Savannah and Stephanie Cutter, the Savannah city manager (collectively, the "City") as to their claims for breach of contract.[1] 333 Ga. App. 446 (776 SE2d 650) (2015). We reversed the trial court's decision and held, *inter alia*, that the issue of whether the City breached its contractual obligations to the firefighters could not be resolved at the motion to dismiss or motion for judgment on

---

[1] The firefighters' complaint alleged that the City paid the Firefighters less than what was contractually required under the terms of the City's written pay policy.

the pleadings phase. *Id*. at 452 (2). On remand, the City filed a motion for summary judgment that was granted by the trial court. Now on appeal, the firefighters assert the following three enumerations of error: first, that the pay policy in effect at the time each firefighter was promoted should control; second, that the firefighters promoted prior to March 31, 2008, were not time-barred from pursuing their claims; and lastly, that, at a minimum, a jury question exists as to whether the job description or schedule of allocations controlled when determining the minimum pay grade for the position of fire captain. For the reasons outlined in this opinion, we affirm.

"On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003) (citations omitted). So viewed, we recite below the facts of *Shelnutt 1* as is relevant to this appeal.

> Christopher Shelnutt and 49 other firefighters (the "firefighters") from the City of Savannah . . . asserted in their . . . [c]omplaint that the City's written Pay Policy created a contract between the City and the firefighters and that the City breached that contract by paying them less than they were owed under the terms of the Pay Policy.

2

. . .

The City's Pay Policy includes provisions outlining changes in compensation for employees when promoted to a higher position, and those provisions have undergone a number of revisions since 1998. From 1998 to November 2009, the Pay Policy provided, in pertinent part, that "an employee promoted to a higher classification shall receive an increase of five percent above his/her current pay," and "when the present rate of the promoted employee is five percent or more below the minimum of the new pay grade, he/she will receive the minimum of the new pay grade." And during the same time period, the Pay Policy also provided that an individual promoted to an "exempt" supervisory position "shall receive an increase of 7.5% above his/her current pay," with the qualification that if "the present rate of the promoted employee is 7.5% or more below the minimum of the new pay grade, he/she will receive the minimum of the new pay grade." As of November 2009, the percentage pay increase for employees "promoted to a higher classification" was raised to ten percent "up to the maximum of the new pay range," and the language providing for a 7.5% pay increase for "exempt" supervisory positions was deleted.

Additionally, as of July 2005, the Pay Policy was amended to include a provision that mandated a one-time promotional pay increase for an employee promoted to a supervisory position, whether exempt or non-exempt, to "a minimum of 5% above the highest paid employee to be supervised at the time of the promotion." This language was removed

from the Pay Policy in the November 2, 2009 revision but was reinserted in the September 8, 2013 revision of the Pay Policy.

The Complaint, as amended, alleges that each of the 50 firefighters has received a promotion since 2002 but did not receive the pay increases outlined in the City's Pay Policy. They assert that Cutter, or her designees, failed to enforce the City's pay requirements as required by the Pay Policy, but rather "determined pay based on personal favoritism and bias."

*Shelnutt*, 333 Ga. App. at 446-447 (footnote and punctuation omitted).

This Court reversed the trial court's dismissal of the firefighters' complaint in *Shelnutt 1* and held that although the firefighters are in a terminable-at-will employment relationship with the City—and promises of future change in compensation are generally unenforceable—each firefighter "may be able to point to the version of the pay policy in effect at the time he or she was hired and show that it provided for a definite percentage pay increase conditioned on promotion to a supervisory position." *Shelnutt*, 333 Ga. App. at 451-452 (2). After remittitur, the City filed a motion for summary judgment. Following a hearing, on March 7, 2017, the trial court granted the City's motion as to the claims of twenty-two of the fifty firefighters for whom there was no pay policy in place at the time they were hired. In

4

that order, the trial court further held that the claims of seven firefighters were also barred because they each received promotions outside the six-year statute of limitations.

On June 15, 2017, the City filed a motion for summary judgment as to the remaining twenty-one firefighters. After a hearing on October 9, 2017, the trial court granted the City's motion. In its order, the trial court found that for each firefighter promoted, the City complied with the pay policy in effect at the time he or she was hired and was thus entitled to summary judgment on the remaining claims. This appeal followed.

1. The firefighters first contend that the trial court erroneously interpreted this Court's prior holding in *Shelnutt 1* to mean that only the pay policy in effect at the time of a firefighter's original hire could give rise to enforceable contractual rights. The firefighters assert that the issue of which particular version of the pay policy governs their claims was not an issue before this Court in *Shelnutt 1* and thus our reference to any version of the pay policy was dicta. We disagree because as explained further below, for the Court in *Shelnutt 1* to determine whether dismissal of the firefighters' claims was authorized, it was necessary for the Court to identify

5

the source of the firefighters' contractual rights— that is, the version of the pay policy from which those rights arose.

As noted above, in *Shelnutt 1*, we held that the firefighters were entitled to pursue their breach of contract claims against the City. 333 Ga. App. at 454. This holding was premised on the legal conclusion that at the time the firefighters initiated this litigation, the question of whether each firefighter could assert a contractual claim depended on whether they could demonstrate that the City failed to pay them in accordance with the version of the pay policy in effect at the time he or she was hired. *Id*. at 451-452 (2). Under OCGA § 9-11-60 (h), "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." Thus, because the trial court's March 7, 2017 order was based on a legal conclusion that directly complies with this Court's holding in *Shelnutt 1*, we find no reversible error.

Moreover, we are unpersuaded by the firefighters' attempt to avoid this result by arguing that the trial court's order granting summary judgment was based on "mere dicta." Contrary to the firefighters' assertions, in *Shelnutt 1*, this Court was asked to determine whether the allegations of the complaint demonstrated that the

6

firefighters would be entitled to relief under any provable facts they could assert in support of their contractual claims. *Shelnutt*, 333 Ga. App. at 450-451 (2). To accomplish this task, this Court reviewed applicable Georgia case law to determine whether the City's pay policy could give rise to a contractual claim by the firefighters in light of their status as terminable at-will employees. *Id*. at 450-451 (2). The Court noted that while terminable at-will employment does not give an employee a contractual right to retain employment, it may give rise to certain contractual rights agreed upon at the beginning of the employment. *See Id*.; *see also Walker Elec. Co. v. Byrd*, 281 Ga. App. 190, 192 (635 SE2d 819) (2006). In holding that the firefighters may be able to assert a contractual claim, we noted that

> although in an at-will relationship, a promise of a future change in compensation generally is unenforceable since neither party is bound to continue performance under the contract at all, this rule does not apply to a promise of future compensation made at the beginning of the employment relationship. Such a promise is enforceable[.]

*Id*. at 451 (2) (footnote, citations, and punctuation omitted). Thus, we were compelled to examine the version of the pay policy from which the firefighters alleged rights arose. *See South Ga. Med. Center v. Washington*, 269 Ga. 366, 367 (1) (497 SE2d 793) (1998) ("[a]n adjudication on any point within the issues presented by the case

7

cannot be considered a dictum, and this rule applies as to all pertinent questions . . . which are presented and decided in the regular course of the consideration of the case, and lead up to the final conclusion, and to any statement in the opinion as to a matter on which the decision is predicated.") (citation omitted).

Additionally, we note that our holding in *Shelnutt 1* is supported by Supreme Court precedent. In *O'Connor v. Fulton Cty*., citing *Shelnutt 1*, our Supreme Court held that in order for promise of future compensation in a terminable at-will employment contract to be enforceable, it must be made at the beginning of the employment relationship. 302 Ga. 70, 71 (1) (805 SE2d 56) (2017); *see also Arby's, Inc. v. Cooper*, 265 Ga. 240, 241, 454 SE2d 488 (1995) (noting that a promise of future compensation must also be for an exact amount or based upon a formula or method for determining the exact amount to be enforceable). We therefore find no error in the trial court's application of our holding in *Shelnutt 1* to the facts of this case. That decision represents the law of the case and is "binding on this [C]ourt as well as the trial court." *Fulton–DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 788 (1) (456 SE2d 97) (1995).

2. The firefighters next argue the trial court erred by holding that the claims of certain firefighters who were promoted prior to March 31, 2008 were time-barred.[2] The firefighters' contend that the pay policy was divisible and the doctrine of successive breaches would prohibit a grant summary judgment in the City's favor. Again, we disagree.

Under Georgia law, all actions upon simple contracts in writing must be brought within six years after the same become due and payable. OCGA § 9-3-24. There is no dispute that the six-year statute of limitations applies to the firefighters' claims against the City. "Georgia courts have long held that the statute of limitation in a contract dispute begins to run on the date that suit on the claim can first be brought." *New Morn Foods, Inc. v. B & B Egg Co.*, 286 Ga. App. 29, 30 (648 SE2d 428) (2007) (footnote omitted). To determine when that six-year period begins running on a breach of contract claim depends on whether the agreement is entire or divisible. *Douglas & Lomason Co. v. Hall*, 212 Ga. App. 475, 477(1) (441 SE2d 870) (1994).

---

[2] The trial court found that the City was entitled to summary judgment as to seven of the fifty firefighters based on stipulated evidence in the record.

If the contract is divisible, the statute runs separately as to each payment when it becomes due, and the failure of one part does not void the remainder. If the contract was to take the whole or none, then the contract would be entire, but, on the other hand, if the quantity, service, or thing is to be accepted by successive performances, then the contract may properly be held to be severable. The character of the contract in such case is determined by the intention of the parties.

*Teachers Ret. Sys. of Georgia v. Plymel*, 296 Ga. App. 839, 845 (2) (676 SE2d 234) (2009) (citations and punctuation omitted).

The contested issue this Court must resolve is when the statute of limitations began to run. Here, it is undisputed from the record that of the fifty firefighters who brought suit against the City, seven were promoted prior to March 31, 2008.[3] In its March 7, 2017 order, the trial court assumed *arguendo* that the pay policy was divisible, and that the statute began to run at the time of each promotion. We agree with the trial court.

As noted in Division 1, the amount each firefighter would receive in the event he or she was promoted was governed by the pay policy in effect at the time of hire. The amounts payable under the pay policy were based upon a formula or method that

---

[3] The original complaint was filed March 31, 2014.

10

determined the exact increased amount of pay each firefighter would receive so long as he or she retained the position. Assuming without deciding that the pay policy was divisible, at their time of hire, each firefighter had the choice to accept employment which included the pay policy's promotional scheme or to reject it. "In contract actions the time of the breach controls, not the time the actual damages result or are ascertained." *Gamble v. The Lovett School*, 180 Ga. App. 708, 710 (350 SE2d 311) (1986) (citations omitted). For each of the seven firefighters promoted prior to March 31, 2008, the alleged breach occurred at the time they were promoted, and not at each pay period as suggested by the firefighters. *See City of Lafayette v. Bates*, 234 Ga. App. 662, 663 (507 SE2d 252) (1998) (the statute of limitation for an action seeking payment of unused sick leave began running when the City changed its employees' sick leave policy, not when the payments came due). The seven firefighters at issue were promoted prior to March 31, 2008. Thus, when the lawsuit was filed six years later, their claims were barred. Accordingly, we find no error.

3. Lastly, the firefighters argue that the trial court erred by holding that the definitive source for determining the minimum pay grade referenced in the pay policy is the schedule of allocations. The firefighters assert that the City modified the terms of the pay policy through its course of conduct by using job descriptions as the

11

controlling document for determining the minimum pay grade. This argument is unavailing.

As an initial matter, the City points out that under Georgia law, sovereign immunity extends to the City and can only be waived by a legislative act of the General Assembly specifically providing for the waiver and its extent. *See Weaver v. City of Statesboro*, 288 Ga. App. 32, 33 (1) (653 SE2d 765) (2007); *see also* Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. "A waiver of sovereign immunity . . . must be established by the party seeking to benefit from that waiver." *McCobb v. Clayton Cty.*, 309 Ga. App. 217, 218 (1) (a) (710 SE2d 207) (2011) (citation and punctuation omitted).

> As our Supreme Court held in *Ga. Dept. of Labor v. RTT Assocs., Inc.*,
>
> General rules of contract law that might otherwise support a claim for breach of contract damages between private parties . . . may not be applied to create a waiver of sovereign immunity where the contract is not in writing as required by the Constitution and by OCGA § 50-21-1. . . . Regardless of the parties' course of conduct, that conduct [is] ineffective to waive sovereign immunity since waiver of sovereign immunity for a breach of contract action requires a written contract.

299 Ga. 78, 82-83 (2) (786 SE2d 840) (2016) (citations omitted). For these reasons, the trial court correctly found that regardless of any alleged course of conduct by the

parties, that conduct was ineffective to waive sovereign immunity. *See Id.* at 86 (3) ("[A] state agency lacks the power to waive sovereign immunity for contract liability by an act other than the execution of a written contract.").

Finding no waiver of the City's sovereign immunity, this appeal turns on the language of the City's pay policy. It is well established that "the cardinal rule of contract construction is to ascertain the intention of the parties." *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 820 (596 SE2d 197) (2004) (citation and punctuation omitted). "[W]e note that the construction of a contract is a question of law for the court" and we must first "decide whether the language of the contract is clear and unambiguous." *Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of City of Cordele*, 315 Ga. App. 696, 699 (727 SE2d 524) (2012) (citations omitted). "[W]hen a written contract's terms are clear and unambiguous, the court cannot go beyond the contract itself and must confine itself to the contract alone to find the parties' intent." *Id*. at 700 (citations and punctuation omitted).

We apply these rules of construction to the pay policy in the present case. From 1998 to November 2009, subsection III A of the pay policy provided, in pertinent part that

The City's pay plan is designed to give comparable pay for comparable work and comply with the recommendations of the Fair Labor Standards Act (FLSA). The pay plan consists of classifications and pay grades organized in a schedule of allocations. The pay grades include minimum and maximum rates of pay. The schedule of allocations assigns each classification to a pay grade. All positions in the same classification shall be assigned to the same pay grade.

By its plain language, the minimum pay grade is set by the schedule of allocations. Despite their contention that a document other than the schedule of allocation dictates the minimum pay rate, the terms of the pay policy preclude this Court from interpreting the pay policy as the firefighters suggest because to do so would render portions of the pay policy meaningless. *See ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007) ("[I]t is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." (citation and punctuation omitted)).

Moreover, we note that in their amended complaint, the firefighters did not allege that the City failed to pay them in accordance with their job descriptions, but instead allege that the pay increases for promotion are controlled by the City's human resources policy manual. "It is well established that a party may make admissions in

judicio in their pleadings, motions and briefs. What a party admits to be true in its pleadings may not subsequently be denied." *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 196-97 (1) (715 SE2d 491) (2011) (citations and punctuation omitted). Nowhere in the pleadings filed by the firefighters do they allege that the City failed to pay them in accordance with the schedule of allocations. Accordingly, we agree with the trial court that the factual admissions in judicio made by the firefighters in their complaint and amended complaint are binding and the schedule of allocations controls.

*Judgment affirmed. Gobeil and Hodges, JJ., concur*.